## Physick's Appeal.

*Creation of estate in fee by devise.—Application of the rule in Shelley's Case to devisee for life, with remainder over to the "right heirs" of first taker.*

1. The presumption arising from the use of technical words of limitation in a will is of an intention that the remainder-men shall take by descent, and not as purchasers.

2. Although words of distributive modification with words of limitation added, are in England held to be sufficient to overcome the primary meaning of the word "heirs," and convert it into a word of purchase, descriptive of individuals, the reason for the rule does not exist in Pennsylvania, except when the remainder is limited to the "heirs of the body," and when the descent is therefore to the heir at common law in severalty.

3. The use of the words "right heirs" is not repugnant to an intent that they shall take by descent, if the intention that they should take as heirs be manifest.

4. Where a testator gave property to his nephew in fee, and in a codicil reciting the previous gift in fee simple, revoked so much of it as gave the property in fee, and instead thereof devised and bequeathed it to trustees for the use of his nephew for and during his natural life, with a power of appointment by will to such child or children, grandchild or grandchildren, as the tenant for life might direct; and in default of appointment ordered the remainder to be equally divided among the right heirs of his said nephew, to them, their heirs, executors, administrators, and assigns for ever; *Held*, That the gift of the life estate and remainder were within the rule in Shelley's-Case, and that the nephew of the testator took an estate in fee simple.

APPEAL from the Orphans' Court of *Philadelphia*.

This was an appeal, by Frances Mary Physick, from the decree of the Orphans' Court dismissing certain exceptions filed for her to the auditor's report in the matter of the trust estate for Emlen Physick, under the will of Samuel Emlen, deceased.

Samuel Emlen died in the year 1838. By his will, dated on the 24th day of the 12th month, A. D. 1836, and duly proved, he devised and bequeathed all the rest, residue, reversion, and remainder of his estate, "real, personal, and mixed," to his friends, Thomas Stewardson, Peter Thompson, and Lindzey Nicholson, and to the survivors, &c., to such uses and trusts as were thereinafter declared, one of which trusts was that "the said residue should be divided equally by the trustees, share and share alike in value, into three several and equal parts or portions," one of which he devised and bequeathed to his nephew, Emlen Physick, his heirs and assigns, "to hold to him, his executors, administrators, and assigns for ever."

Another third was to be transferred and conveyed to trustees, of whom the accountants are the survivors, upon the following trusts—"to permit and suffer my niece, Sarah Emlen Randolph (wife of Doctor Jacob Randolph, and daughter of my late sister, Elizabeth Physick, deceased), for and during her natural life, to take and receive the rents, issues, and profits of all that the said

[Physick's Appeal.]

one equal third part or portion of the said residue of my estate, to and for her own separate and sole use and benefit, without being in anywise subject to the contracts, debts, control, or interference of her present or of any future husband; and from and immediately after the decease of my said niece, Sarah Emlen Randolph, then the said equal third part or portion to go to such child or children, or grandchild or grandchildren of hers, my said niece, Sarah Emlen Randolph, as she, by her last will and testament in writing duly executed, shall, notwithstanding her coverture, devise and bequeath the same; but should my said niece, Sarah Emlen Randolph, depart this life without making any such last will and testament, disposing of the said equal third part or portion of the said residue of my estate, then I direct the same to be equally divided among the right heirs of my said niece, Sarah Emlen Randolph, to them, their heirs, executors, administrators, and assigns for ever."

The remaining third part of the residue was then given to the same trustees, upon similar trusts, for the separate use of the testator's niece, Mrs. Susanna Dillwyn Conner.

On the 27th day of the 12th month, A. D. 1837, the testator executed a codicil to his will in the following words:—

"Whereas, I have by said will bequeathed, given, and devised to my nephew, Emlen Physick, certain estate in fee simple; and whereas, for certain good reasons, I wish to alter this in some measure: therefore I do hereby annul, revoke, and make void so much of my said will as would convey the share of my estate allotted to him in fee simple, and instead thereof I do give, devise, and bequeath the said share of my estate for the use, behoof, and benefit of my said nephew, Emlen Physick, to the same trustees, and subject to the same trusts and limitations (sex only being so far changed as is necessary to carry out my intentions), as are appointed by me in my last will and testament, for his sisters, Sally Emlen Randolph and Susan Dillwyn Conner; and lastly, I do hereby ratify and confirm all my last will and testament, except so much as is hereby necessarily altered."

Emlen Physick, the testator's nephew, was unmarried at the time of the execution of the will and codicil, and at the date of the testator's death. About the 1st of January 1852, he rented a house in Juniper street, as a residence for Frances Mary Parmentier, and supplied it with necessaries. He then resided in Spruce street, below Sixth street, but passed the greater part of the time in the house in Juniper street. Afterwards Mrs. Parmentier resided with him in Spruce street, and in various other places, down to the date of his death, on the 24th of April 1849.

On the 5th of November 1852, a child was born to Mr. Physick by Mrs. Parmentier, named Susan Emlen Physick. She died on the 16th of December 1856, in the lifetime of her father.

WR.—9

On the 5th day of June 1855, another child was born to Mr. Physick by Mrs. Parmentier, who was named Emlen Physick, and on the 7th January 1857, on the petition of Mr. Physick, and with the assent of the child's mother, an Act of Assembly was passed of the following tenor :—

" *An Act legitimating Emlen Physick.*

" Section 1. Be it enacted, &c., That Emlen Physick, born June fifth, Anno Domini one thousand eight hundred and fifty-five, child of Emlen Physick, of the city of Philadelphia, shall have and enjoy all the rights and privileges, benefits and advantages of a child born in lawful wedlock, and shall be able and capable, in law, to inherit and transmit any estate whatsoever, as fully and completely, to all intents and purposes, as if he had been born in lawful wedlock."

In April 1857 Emlen Physick, with this child and his mother, sailed for Europe. He treated her as his wife during the passage and in London, where on the 6th day of August 1857 another child was born named Ellen Elizabeth Physick.

On the 11th of April 1857 Mr. Physick made his will; on the 7th of April and 23d December 1858 he executed two codicils to it, and died April 24th 1859.

After a legacy in trust for certain children of Lucy Williams, he gave an annuity to Frances Mary Parmentier until she should marry, a legacy of $30,000 in trust for his daughter Ellen Elizabeth, and the residue of his estate to his son Emlen.

In neither the will nor the codicils was there anything purporting to be an exercise of the power of appointment conferred upon him by the codicil to the will of Samuel Emlen; nor was there any reference, directly or indirectly, to the power itself, or to the property subject to it.

On the 17th of March, A. D. 1860, the Pennsylvania Company for Insurances on Lives and granting Annuities, executors of Emlen Physick, filed their account, which was referred to Joseph A. Clay as auditor for settlement and distribution.

Mrs. Parmentier having refused to take under the will, attended at the audit of this account with her counsel, and claimed one-third of the estate as the lawful wife of the testator. A great amount of testimony was taken upon this claim, and after argument of counsel on both sides, the auditor reported that a marriage between Emlen Physick and the claimant had been sufficiently established by proof of admissions and of matrimonial cohabitation and reputation, since the date of the act legitimating Emlen Physick. He also reported that Ellen Elizabeth Physick was a legitimate child of Emlen Physick, the testator. Exceptions were taken to this report.

At the hearing before the auditor Mr. Lowber, on behalf of the

[Physick's Appeal.]

trustees, argued that the testator intended that Emlen Physick should take a life estate only, and that his right heirs should take the remainder in fee as purchasers, as was evident from the fee given by the will, which was revoked by the codicil, and the same estate given in trust for the devisee, with a mere power of appointment; that the direction that the estate should be equally divided among the right heirs, and the superadded words of limitation, showed that the testator intended to create a new stock, and that the word "heirs" should be divested of its ordinary meaning. The rule in Shelley's Case, therefore, did not apply. He cited Fearne 189; Smith on Exec. Int., § 430; Guthrie's Appeal, 1 Wright 9; Finlay v. Riddle, 3 Binn. 139; Hileman v. Bouslaugh, 1 Harris 352; Abbott v. Jenkins, 10 S. & R. 296; George v. Morgan, 4 Harris 95. To show that the power of appointment was not exercised, he cited the case of Pepper's Will, 1 Pars. 436.

Mr. Thomas, for Mrs. Physick, said that the presumption was, that the testator, by revoking the original devise in fee, did not intend to limit the quantity of the estate, but to deprive Emlen Physick of the absolute dominion over it. The case differed entirely from Guthrie's Appeal, where the word used was "children." Here the word was "heirs," and there was nothing to prevent its being taken in its ordinary sense. The rule in Shelley's Case applied since the power of appointment had not been exercised, and the trust was executed, as there were no ministerial duties for the trustees to perform. Another important distinction between this case and Guthrie's Appeal was, that here there were no children in esse at the date of the will, and they could not therefore have entered into the testator's contemplation. He cited Garnett v. Lynn, 7 Casey 94; Carter v. McMichael, 10 S. & R. 429; James's Claim, 1 Dall. 47; Paxson v. Jefferts, 3 Rawle 59; Kuhn v. Newman, 2 Casey 227; Kay v. Scates, 1 Wright 31; 1 Sugd. on Powers 386; 2 Id. 238.

The auditor, for the reasons given in his report, decided, that Emlen Physick took a life estate under the will of Samuel Emlen. On exception filed to this decision, the court below confirmed the report; which was the error assigned here by the appellant.

*J. T. Thomas*, for the appellant.—It is conceded that the power of appointment was never exercised by Emlen Physick. But it has been contended on the other side, that "a power of appointment is in restraint of a fee;" for which, however, no authority has been cited. On the contrary, in Lancaster v. Dolan, 1 Rawle 248, Gibson, C. J., cites the following language of Sugden on Powers: "A general power of appointment is, in regard to the estates that may be created by force of it, tantamount to a limitation of a fee." Counsel here make no distinction between general and particular powers.

Though a particular power, if executed, might make a fee only in the appointee, yet if not executed, the estate limited in default of appointment is vested : 2 Sugd. on Powers *5. " The result of the authorities is, that the power of appointment does not prevent the vesting of the estates limited in default of appointment." This may be subject to be divested by a subsequent appointment : Id. But in this case it is too late for that, for the party having the power is dead.

Where a power is given but not exercised, the estate will vest as if none had been given. Counsel place reliance on the use by the testator of words of distributive modification, with superadded words of limitation ; such as " to be equally divided," and " to them, their heirs, executors, administrators, and assigns for ever," as being powerful to convert the word " heirs" into a word of purchase, and thus to preclude all idea of a fee simple. For which they cite Smith on Executory Interests, § 488.

But it will be seen, on reference to that authority, that the superadded words there contemplated, are after the words " heirs of his body." In the case before the court, the expression is simply " right heirs," which, without more, would amount to a fee. This being so, no subsequent words, such as are used here, can limit or control it. The moment the word " heirs" is used, the whole estate passes, and such an addition as " to them, their heirs, executors," &c., is a mere surplusage ; for though a fee may be limited after a fee in a will, yet it must be limited to some other person. Where the language is " heirs of the body," the superadded words would have the force claimed for them, because that expression gives an estate less than a fee, and is *descriptio personarum*.

The objection to words of distribution can only apply in England, where such a method of taking would be at variance with the course of descent pointed out by the law. But in Pennsylvania, distribution is the law of descent, and, whether it be provided for or not in the instrument, the law will so direct it.

As words of distribution and superadded words of limitation are both required, even in England, to defeat the rule in Shelley's Case, and as distribution is the settled policy, usage, and law in Pennsylvania, and not at variance with them in England, it should be conclusive.

It will be found, upon a careful examination of the English cases, that the superadded words of limitation have only possessed the force now claimed for them by the other side when used after " heirs of the body," and never when used after " heirs," or " right heirs :" Goodright *v*. Pullen, 2 Ld. Raym. 1437 ; Morris *v*. Le Gay, 2 Burr. 1102, 2 Atk. 219 ; Lord Glenorchy *v*. Bosville, Cas. Temp. Talb. 3, Fearne 126, 160, 162 ; Papillon *v*. Voice, 2 P. W. 471. See also the following cases cited by Smith

[Physick's Appeal.]

in support of the rule laid down in section 488 : Doe *v.* Lanning, 2 Burr. 1100 ; Crump *v.* Norwood, 7 Taunt. 362 ; Doe *v.* Ironmonger, 3 East 583 ; Right *v.* Creber, 5 B. & C. 866 ; which hold that the provisions were in conflict with the laws of descent in England.

In Garnett *v.* Lynn, 7 Casey 94, and Findlay *v.* Riddle, 3 Binn. 139, the restriction of the estate to children is clear and unmistakable. And they both tend to support the principle contended for by this appellant.

In Hileman *v.* Bouslaugh, 1 Harris 352, Carter *v.* McMichael, 10 S. & R. 429, and Paxson *v.* Lefferts, 3 Rawle 5, the provisions were to a son for life, and to the heirs (or heirs male) of his body, and to them and their heirs and assigns for ever : held to be an estate tail in each case.

In James's Claim, 1 Dallas 47, there was a devise to A. for life, and, if he leaves lawful issue, then to such issue ; but in case of his dying without issue, then to B. in fee. A. was attainted of treason : held, that he took an estate tail, which was forfeited by the attainder.

Guthrie's Appeal, 1 Wright 10, and Chew's Appeal, Id. 24, are much relied upon as authorities against the positions contended for by this appellant ; but the facts are widely different from those which exist in Emlen's will, and the reasoning of the court in the former case is strongly in support of those positions. No case depending upon a construction of the word "heirs," or "heirs of the body," was then before the court. The decision of the court upon the case before it was, undoubtedly, correct. But it is submitted that no case has arisen where a devise to a man for life, and after his decease equally to his heirs, and their heirs, executors, &c., has been held to give a life estate only, and to convert words of limitation into words of purchase.

*Thomas Stewardson*, Jr., and *Henry S. Lowber*, for appellees, argued : 1. That the object of the rule in Shelley's Case is not to defeat the intention of the testator, but to carry out the primary intent of the testator, and disregard only the secondary intent.

The primary intent, in cases where the rule is applied, is held to be that "the estate should descend to all the heirs, general or special, of the ancestor, and to none but those who are heirs of the ancestor :" Smith on Executory Interests, § 430. The secondary intent, viz., that the heirs should take by purchase, is made to give way to this : Id., § 431, *et seq.* The only way to accomplish this, and sustain the primary intent, is for the heirs to take by limitation.

But where the testator shows that he meant to create a new stock, that the remainder-men should take as the root of a new succession, no such intent as is above called the primary intent of the testator can be attributed to him, and the rule does not apply, the reason for it having ceased.

That the remainder-men are the same persons who would take as heirs makes no difference. We must first seek the intention of the testator, whether or not the heirs were to take in that character. See Guthrie's Appeal, 1 Wright 13; Findlay *v.* Riddle, 3 Binn. 139; Hileman *v.* Bouslaugh, 1 Harris 352; Chew's Appeal, 1 Wright 23.

In our case, it is evident the testator did not intend to give Emlen Physick a fee: for, 1. In his will he did give him a fee, and in his codicil he revoked this, created a trust, and gave him expressly a life estate. 2. It would be useless to give him a power of appointment if he thought he had already given him a fee.

2. According to the principles laid down by this court, language similar to that used in this will shows that the testator intended that the remainder-men should take as a new root of succession, and that in such cases the rule does not apply, but that the first taker has a life estate, and the remainder-men a fee by purchase.

Smith, in his Treatise on Executory Interests, § 484, *et seq.*, enumerates " six ways, at least, in which the word heir or heirs has been thus indirectly explained, and divested of its most usual meaning." The present case seems to fall under the fourth. See also Abbott *et al. v.* Jenkins, 10 S. & R. 296.

3. The direction in Samuel Emlen's will, that the estate shall be equally divided between the right heirs of Emlen Physick, restricts the meaning of the first word " heirs," and shows that the application is not to heirs indefinitely, but to heirs living at the time of his death. Consequently the intention cannot have been that they should take in the character of heirs.

4. It would appear that the testator intended the words " the right heirs" of my said nephew to denote the children and grandchildren of Emlen Physick. For he first directs the share of his property referred to " to go to such child or children or grandchild or grandchildren" as he should by will appoint; but should he " depart this life without making any such last will and testament," " then I direct the same to be equally divided among the right heirs" of my said nephew, " to them, their heirs, executors, administrators, and assigns for ever." If this view is correct, Emlen Physick, if he did not take a life estate, must have taken a fee tail. But this cannot be ; for we would then come directly within the decision in Guthrie's Appeal. The direction for the equal division would be in opposition to our law as to estates tail, viz., that they go to the heirs of the body successively.

5. The distribution directed by our Act of Assembly of intestates' estates, may or may not be an equal division ; whereas this will directs that the distribution be equally made, whatever the number of heirs, or however they may stand in relation to the decedent, or each other.

We are dealing with an arbitrary rule of the English law, a

well-settled principle of which is, that where a testator directs an equal distribution among his heirs, and superadds words of limitation, the heirs do not take by limitation, but by purchase. Will this court change this principle, to enlarge the rule, and defeat what it is apparent was the intention of the testator?

The learned counsel for the appellant says that the English cases show that the superadded words of limitation have only possessed the force now claimed for them by the appellees, when used after "heirs of the body," and never when used after "heirs," or "right heirs." Even if it is so, it is of no consequence; the reasoning upon which the principle we contend for is founded, applies equally to cases where estates in fee tail and estates in fee simple would be given were it not for the rule in Shelley's Case. A direction for equal distribution is as much in conflict with the law of England (whatever it may be in this country), as to the descent of a fee simple, as it is in regard to the descent of a fee tail.

The opinion of the court was delivered, May 15th 1863, by

STRONG, J.—By his will the testator first gave the property now in controversy to his nephew Emlen Physick, absolutely; to him, his heirs, executors, administrators, and assigns for ever. Subsequently, by a codicil to his will, reciting the previous gift in fee simple, he revoked so much as gave the property in fee, and instead thereof devised and bequeathed it to trustees, for the use of his nephew for and during his natural life, with a power of appointment by will to such child or children, grandchild or grandchildren, as the tenant for life might direct, and in default of appointment, ordered the remainder to be equally divided among the right heirs of his said nephew, to them, their heirs, executors, administrators, and assigns for ever. That the intent was to give to Emlen Physick but an estate for life, is beyond doubt. It is expressly avowed, and the testator made a change in his first testament, an arrangement for no other purpose than to substitute in lieu of a fee a particular estate for life with subsequent remainders. The property was also given to trustees to sustain and carry out the ulterior limitations. Thus much must be conceded. The power was never executed, and the trusts are not of a character to affect the title. The estate given to the first taker and that given in remainder are both legal, for the law executed the trust. This is not controverted. If, then, Emlen Physick took more than an estate for life, it must be because the limitations of the remainder were such as to bring the gift within the rule in Shelley's Case, and enlarge the estate of the first taker in despite of the intent of the donor. It is admitted that the plain intention to give no more than a life estate must fail, if there was also an intention that the remainder-men should take by descent as heirs of the devisee of the particular estate. In every such case the rule inexorably determines, that the ancestor shall have an estate

in fee.  The case then is reduced to the question, whether in the gift of the remainder, the testator used the term "right heirs" in its legal and ordinary sense, or as descriptive of persons, and to indicate the root of a new succession.  The strong presumption arising from the use of technical words of limitation, is of an intention that the remainder-men shall take by descent—a presumption not easily overcome.  It may be rebutted, but it can be by nothing short of affirmative evidence of a contrary intent, so clear as to leave no reasonable doubt.  I do not find such evidence in this will.  In searching for it, I can attach no importance to the language used in the gift of a restricted power of appointment to such child or children or grandchild or grandchildren of the tenant for life, as he might designate by his will.  It cannot be overlooked that the dispositions of the remainder, after the gift of the particular estate for life, are alternative limitations.  One cannot help the other.  Each must stand by itself.  If no appointment was made, the will is to be read as if it contained no power of appointment, and the case has not arisen in which the testator contemplated a benefit to the child or children, grandchild or grandchildren of the first taker.  Then there is no other indication of an intent that the right heirs should take as purchasers, than the direction of an equal division among them, their heirs, executors, administrators, and assigns for ever.  Words of distributive modification, with words of limitation added, are held to be sufficient in England to overcome the primary meaning of the word "heirs" and convert it into a word of purchase, descriptive of individuals.  Why?  Because each shows an intent that the remainder-man described as heir, shall not take as such.  As heir, he must take either a fee simple or fee tail, *in solido* and in severalty.  He cannot take as a tenant in common with others.  There can be but one heir at law.  And a superadded limitation to his heirs can mean nothing if he does not take as a new root of succession.  The first direction is repugnant to the technical meaning of the word heirs; and though, standing alone, it must give way, yet when fortified by a second limitation, the intent to use the technical word as descriptive of persons is thought to be sufficiently apparent.  But in this state the principal reason for the English rule is wanting, except when the remainder is limited to "heirs of the body," and when the descent is therefore to the heir at common law in severalty.  After all, it is a question of intention.  How did the donor, or testator, intend the remainder-men to take?  If as heirs, in this state they take distributively, and, therefore, a direction that the remainder shall be divided among right heirs, is not repugnant to an intent that they shall take by descent.  There is in this will nothing to show that the testator did not use the words of limitation, "right heirs," in their proper sense, except the superadded words of limitation, and these alone have always been held insufficient.

The direction of an equal division among the right heirs, affords no indication of an intent that they shall take as purchasers, for if there be heirs in different degrees, they take equally *per stirpes*, and that is the rule of descent

The gift of the life estate and remainder is then plainly within the rule in Shelley's Case, and the court erred in decreeing that Emlen Physick did not take a fee; consequently the widow is entitled to share in the distribution.

> The decree of the Orphans' Court is reversed, and it is ordered, adjudged, and decreed, that one equal third of the sum for distribution be paid to Frances Mary Physick; one half of the remainder is awarded to the guardian of Emlen Physick, and the other half to the guardian of Ellen Elizabeth Physick.

Subsequently, on exception to the report of the master making distribution in accordance with the foregoing decree, the following amended opinion and decree were made by

STRONG, J.—In making our decree at January Term 1863, in the matter of the appeal of Frances Mary Physick, we inadvertently fell into an error. The only question argued before us related to the estate which Emlen Physick took under the will of Samuel Emlen. That we held to have been a fee simple, and consequently we decreed that the appellant was entitled to one equal third part of the fund for distribution. There our decree should have ended. But in order to dispose of the entire fund, we awarded one half of the remainder to the guardian of Emlen Physick the younger, and the other half to Ellen Elizabeth Physick, the son and daughter of the devisee in fee, under the will of Samuel Emlen, without noticing that a disposition of the fund had been directed by the will of that devisee. This was an error, and our decree is to be corrected so far as it awards any part to Ellen Elizabeth Physick, and only one-half of the remainder, after deducting the share of Frances Mary Physick, to Emlen Physick. The property passed under the residuary devise and bequest to the trustees named in the will, diminished by what the widow was entitled to receive. It was not a case of intestacy. Of this we have no doubt. The master followed our decree, and therefore made an erroneous distribution.

> Let our decree be corrected by striking out so much thereof as directs a distribution of the remainder, after deducting the sum awarded to Frances Mary Physick, and let the case be referred back to Joseph A. Clay, Esq., to make distribution of the said remainder according to the directions of the will of Emlen Physick, deceased, and let the costs of this appeal be paid out of the fund.