## Nice's Appeal in James's Estate.

*Creation of estate in fee by devise.*—" *Devise to the right heirs, executors, administrators, and assigns for ever*" *construed.*—*Application of the rule in Shelley's Case.*

Where a testatrix gave the residue of her estate to a married daughter, in trust for her sole and separate use, with remainder to her "right heirs, their heirs, executors, administrators, and assigns for ever, in such proportions as they would be entitled to, agreeably to the laws of Pennsylvania, in case she had died intestate, seised and possessed of the property in her own right": after the death of her husband, it was *Held :—*

1. That the devisee took under the will an estate in fee simple; and
2. That she had the right to demand a conveyance of the legal estate from the trustee.

APPEAL from the Common Pleas of *Philadelphia.*

This was an appeal by Levi Nice from the decree of the court below in the matter of the petition of Amanda James, praying for a citation to said Levi Nice, requiring him to convey to her certain real estate which he claimed to hold in trust for her under the will of Mary Dugan, deceased.

On the 11th of October 1862 a petition was presented to the court below by Amanda James, setting forth that her mother, by her will, bearing date August 6th, A. D. 1832, duly registered and proved, had devised and bequeathed the residue of her estate, both real and personal, to her brother, Levi Nice, and her sister, Ann Nice, to hold to them, their executors, administrators, heirs, and assigns for ever, in trust. And that they should permit and suffer her daughter, Amanda James, the petitioner, wife of Jeremiah James, notwithstanding her coverture or whether she were covert or sole, to receive and collect the income of all the said residue

of her estate, both real and personal, for her own separate use and benefit, without being subject to the control or liable for the payment of the debts of her present or any future husband, and her receipts, notwithstanding her coverture, should be good for the same; and that from and immediately after the decease of her said daughter, the said trustees should grant and assign the said residue of her estate unto such person or persons as should be the right heirs of her said daughter Amanda, their heirs, executors, administrators, and assigns for ever, in such proportions as they would be entitled to, agreeably to the laws of Pennsylvania, in case her said daughter Amanda had died intestate, seised and possessed of the same in her own right.

That the husband of the petitioner had departed this life in the month of November 1854, and that she had from that time been and then was discovert and a *feme sole*.

That Ann Nice, one of the said trustees, was deceased, and the said Levi was the sole surviving trustee under the said will; and that, by the terms thereof, and by reason of the petitioner being then discovert, the trust thereby created had expired and was at an end, and the petitioner was authorized to ask a conveyance of the said legal estate from the said surviving trustee. That she had demanded such a conveyance, but it had been refused. The petitioner therefore prayed for a citation to the said trustee requiring to show cause why he should not make such conveyance, and, in default thereof, that he be ordered to make the said conveyance, as prayed for.

A citation, returnable October 25th 1861, was accordingly granted, and notice ordered to be given to the children and issue of the said Amanda.

To this petition Levi Nice filed an answer, setting forth that the husband of the petitioner was deceased several years before the death of the said Mary Dugan.

That he had declined to make the conveyance asked for, under advice of counsel, and that he was entirely disinterested in the matter, and submitted the same to the adjudication and decree of the court.

On the 7th of March 1863, the cause came on to be heard, and, after due consideration, it was, on the 14th of March 1863, ordered, adjudged, and decreed, that "the said Levi Nice, surviving trustee as aforesaid, do forthwith grant, assign, transfer, and convey to the said Amanda, and to her heirs and assigns, all the said residuary estate, real and personal, devised and bequeathed under the will of the said Mary Dugan, deceased, and do also pay over into the hands of the said Amanda James, all the interest and income now in the hands of the said trustee, derived from the said estate, which has accrued therefrom, and not

heretofore paid over by him, and that the trustee be allowed his costs in this proceeding."

From which decree an appeal was taken to this court, and the making of the decree assigned for error.

The clause in the will of Mrs. Dugan on which this proceeding was founded, is as follows:—

"And as concerning the residue of my estate, both real and personal, I do give, devise, and bequeath the same to my brother, Levi Nice, and my sister, Ann Nice, to hold to them, their executors, administrators, heirs, and assigns for ever. In trust, nevertheless, that they, the said Levi Nice and Ann Nice, and the survivor of them, and the heirs and assigns of such survivor, shall place out the proceeds of my personal estate upon good securities, either on mortgage or in public or other good stocks, or in real estate or ground-rents, as to them shall seem meet, and that they shall permit and suffer my daughter Amanda James, wife of Jeremiah James, notwithstanding her coverture, or whether she be covert or sole, to receive and collect the income of all the said residue of my estate, both real and personal, for her own separate use and benefit, without being subject to the control or liable for the payment of the debts of her present or any future husband, and her receipt (notwithstanding her coverture) shall be good for the same; and from and immediately after the decease of my said daughter Amanda, that they, the said Levi Nice and Ann Nice, and the survivor of them, and the heirs and assigns of such survivor, shall grant and assign the said residue of my estate, real and personal, unto such person or persons as shall be the right heirs of my said daughter Amanda, their heirs, executors, administrators, and assigns for ever, in such proportions as they would be entitled to, agreeably to the laws of Pennsylvania, in case my said daughter Amanda had died intestate, seised and possessed of the same in her own right."

*Samuel Dickson* and *J. C. Bullitt*, for appellant, argued: That the intent of the testatrix was, first, that the trustees appointed under her will should protect Amanda James during life from the husband whom she then had, and from any other whom she might marry; and, secondly, that they should support the contingent remainders devised "to such person or persons as shall be the right heirs of the said Amanda." The intention that the persons so designated should take not in the capacity of the representatives of Amanda, but as the root of a new succession, is indicated by the superadded words of limitation: "Their executors, administrators, and assigns for ever." The *onus*, therefore, is upon the counsel of the other side to show that the rules of law will not permit it to be made effectual.

It is settled that had the estate of the first taker remained an equitable one, while that in remainder was legal, there could have

14 Wr.—10

been no merger, and there would have been no pretence for claiming that the appellee was entitled to the fee : 1 Bro. C. C. 74 ; 8 Vin. Abr. 262, pl. 19 ; 2 T. R. 444 ; 3 East 533 ; 12 Ves. 89 ; 18 Id. 395 ; 1 V. & B. 485 ; 6 Q. B. 860.

But it must, perhaps, be conceded that by her discoverture the life interest given to Amanda became a legal estate ; and that, as to that no duties are imposed upon the trustees of such a character as will keep the trust alive. It is submitted, however, that her interest is nothing more than a life estate ; and that the remainder in fee is still vested in the trustees, to be " granted and assigned from and immediately after" her decease. See Cote and Wife *v*. Von Bonnhorst, 5 Wright 243.

The word heirs is used by Mrs. Dugan, but it may be divested of its technical meaning, if the intention of the testator requires it, so as to prevent the application of the rule in Shelley's Case : See Guthrie's Appeal, 1 Wright 9, cited by counsel for appellees, and in opinion of the court ; Chew's Appeal, Id. 23. Bush's Appeal, Naglee's Appeal, and McKee *v*. McKinley, all reported in 9 Casey's Rep., were decided by a bare majority, and are no longer law. The present tendency of the court, it is believed, is more in accordance with the true principles of construction, and with the well-settled doctrine of Pennsylvania law : Findlay *v*. Riddle, 3 Binn. 149 ; Abbott *v*. Jenkins, 10 S. & R. 298 ; Miller *v*. Lynn, 7 Barn. 443 ; Gernet *v*. Lynn, 7 Casey 94.

Should the court be of the opinion, however, that by the discoverture the trust was discharged, and the life estate and the fee thereupon merged in the appellee, it is submitted that there was error in granting the petition for a conveyance : Rush *v*. Lewis, 9 Harris 72 ; Kuhn *v*. Newman, 2 Casey 227.

*G. W. Biddle*, for appellee, contended—I. That Mrs. James had an absolute estate in fee simple in the residuary estate given under her mother's will.

The appellant avers—1. That the estate limited to her for life was an equitable one, and would not unite with the remainder to her right heirs, which was a legal estate. This ground is untenable : Kuhn *v*. Newman, 2 Casey 227 ; Steacy *v*. Rice, 3 Id. 75 ; Whichcote *v*. Lyle, 4 Id. 73 ; Bush's Appeal, 9 Id. 85 ; Kay *v*. Scates, 1 Wright 31. Should there be, however, any intention in this court to review the doctrine taken in Kuhn *v*. Newman and its congeners, Steacy *v*. Rice, *ubi supra*, will not be touched by such review. It is precisely this case, and is in perfect harmony with the decisions in the mother country : See Kay *v*. Scates, 1 Wright 37, line 12 to line 33.

2. It is argued by the appellant that Mrs. James's interest is, notwithstanding the limitation to her right heirs, only a life estate. Cote *v*. Von Bonnhorst, 5 Wright 243, referred to in support of

this position, has no resemblance to the present case. The devise in that case given in appellant's argument, shows the dissimilarity. The word there used was *children*.

Here the words are: "Unto such persons as shall be the *right heirs* of my said daughter. By these words, quantity of estate and descent, and not individuals, are presumed to be intended; and when employed, the burden is thrown on him who contends that they are words of purchase, to rebut this presumption, and to show they were used in the particular devise to designate persons. The intent not to use the words in their legal sense must be unequivocal. This is shown by all the treatises on this branch of the law, and is adverted to in several of the cases cited by the appellant.

It is not children that the testatrix refers to, or grandchildren, or any particular individuals, but the heirs of the tenant for life, in the most general, broadest sense the term is susceptible of conveying. There is nothing to be found in the will to qualify in the least this positive intention, or to show that Mrs. Dugan meant anything but that those designated by her as the right heirs of her daughter were to take as heirs, instead of becoming the root of a new succession, in which case the rule in Shelley's Case is applied, although it may defeat a manifest intention that the first taker should have but an estate for life.

The cases of Bush's Appeal, Naglee's Appeal, and McKee *v.* McKinley, in 9 Casey, said by the appellant to be overruled (although this is inaccurate as to Bush's Appeal, see 1 Wright 38), have no application to our case, because in all of them the language used is quite different. The present judgment may be sustained without the aid of any of those cases. Nor do the superadded words of limitation affect the present case, as is shown in Smith's Executory Interests, Proposition 2, § 474, in the discussion of the rule in Shelley's Case.

Mrs. James, the appellee, therefore took an estate in fee simple in the property devised to her.

II. As to the right of the appellee to demand the conveyance of the legal estate.

The authority for this demand is contained in the Act of 14th June 1836, § 30, which gives the courts power, on the application of the party interested, to compel the conveyance by trustees of the legal estate, when the trust has been executed or has expired. By the discoverture of Mrs. James, the trust for her separate use has expired, and she has therefore a right to call for a conveyance from the trustee.

It is true, that in the cases of Rush *v.* Lewis and Kuhn *v.* Newman, cited by the appellant, it was deemed unnecessary for the trustee to make the conveyance, as the legal estate was held to be already in the party who asked for this order. But Kay *v.*

Scates, 1 Wright 31, a later decision, decides that such a convey-
ance will be decreed, where the purposes of the trust have been
accomplished.   See also on this point Kenton *v.* Vandergrift, 6
Wright 339.

The opinion of the court was delivered, January 9th 1865, by
STRONG, J.—The testatrix, by her will, gave the residue of her
estate, real and personal, in trust for the sole and separate use of
Mrs. James, without any express restriction of the quantity of the
estate given.   Had this been all, the devise might have been
regarded the gift of an estate for life.   But the gift to Mrs. James
was followed immediately by a gift of the remainder to her "right
heirs," "their heirs, executors, administrators, and assigns for ever,
in such proportions as they would be entitled to agreeably to the
laws of Pennsylvania, in case she had died intestate, seised and
possessed of the property in her own right."   The disqualifica-
tion of coverture having ceased with the death of her husband,
and the present estate as well as that in remainder being now of
the same nature, and both created by the same instrument, it is
manifest that Mrs. James has an estate in fee simple, unless the
will clearly shows that in the gift of the remainder, the testatrix
used the words "right heirs" in an abnormal sense : not as
descriptive of the character in which she designed the remainder-
men to take, but as designating the persons who should be the
objects of her bounty.   Every presumption is, that she intended
to use the words "right heirs" in their technical sense, as words
of limitation, and there is nothing in the will to rebut the pre-
sumption, except the fact that the gift of the remainder was to
"right heirs," their heirs, executors, &c.   But superadded words
of limitation have never of themselves been held sufficient to con-
vert the words of limitation to which they are added into words
of purchase.   The most that can be said of them is, that they are
superfluous.   They are not inconsistent.   Words of distributive
modification may be inconsistent with a gift to heirs *as such*, and
hence, it has sometimes been held that a gift to "heirs of the
body," or even "heirs," in England (where the oldest son takes
in exclusion of his brothers and sisters), if followed by added
words of limitation, and by words of distributive modification,
may amount to no more than a gift to children.   Together, they
overcome the presumption that technical terms are used in a
technical sense ; alone, neither of them is sufficient : Smith on
Executory Interests 488.

It is true this will contains words of distributive modification of
the remainder given to the right heirs of Mrs. James ; but they
are not inconsistent with the presumed intent of the testatrix, that
the remainder-men should take as right heirs.   They would be in
England, and they would be with us in a case where a remainder

[Nice's Appeal.]

is limited to heirs of the body ; for in such cases distribution by descent is impossible.    But with us, a gift to heirs generally in fee, contemplates descent according to the intestate laws.    Hence, a direction that it shall so descend, is in perfect harmony with the technical meaning of the words of the gift, and, consequently, is no reason for presuming that the donor employed the technical language in any other than its ordinary and legitimate sense. See Physick's Appeal, ante, p. 128.

· This is enough to show that we think this case was rightly decided.

The decree of the Court of Common Pleas is affirmed.