## Appeal of Cockins and Harper, Executors.

1. A testator made the following will: "I also bequeath the balance of my estate, real, personal and mixed, to my three nieces, share and share alike, during their lives, and at their deaths to go to their heirs, in equal amounts to all heirs living at the time of their deaths."
   *Held*, that the devisees took under the rule in Shelley's case, the real estate in fee simple and the personal estate absolutely.

2. The word *heirs* is always to be presumed to have been used by a testator in its technical sense, and is to be regarded as a word of limitation and not of purchase, unless it very clearly appears that it was used and intended by him in some other sense.          *

October 21st, 1885.     Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Orphans' Court of *Washington county:* Of October and November Term, 1885, No. 174.         .

Appeal of J. L. Cockins and Elizabeth Harper, executors of Matilda Hutchinson, deceased, from a decree of said court, making absolute a rule granted upon the petition of Martha Jane Henderson and Francis M. Weir on said executors to show cause why their shares of the balance of the personalty, as shown by the account of J. L. Cockins, one of said executors, should not be paid to them without requiring them to give bonds.

Matilda Hutchinson, a resident of Canonsburgh,. Washington county, Pa., died on the 29th day of March, 1884, testate. Her will was dated March 24th, 1884, and was proved on the 6th day of May, 1884, upon which date letters testamentary were issued to J. L. Cockins and Elizabeth R. Harper, the executors therein named.

The testatrix left to survive her two nephews, J. H. Henderson and Robert Henderson, and three nieces, Elizabeth R. Harper, Martha J. Henderson, and Frances M. Weir, being the children of a deceased sister. Of her said three nieces, at the date of the will, Mrs. Elizabeth R. Harper and Mrs. Frances M. Weir had issue living. Miss Martha Jane Henderson was unmarried and without issue.

To each of her said nephews she bequeathed the sum of $1,000, and the residuum of her estate, real and personal, she devised and bequeathed to the said three nieces for life, with remainder to their heirs. In relation to this gift or devise of the residuum to the nieces aforesaid, the language of the will is as follows:

"I also bequeath the balance of my estate, real and personal, to my three nieces [naming them], share and share alike, during their lives, and at their deaths to go to their

heirs in equal amounts, to all heirs living at the time of their deaths. I also decree that no part of my real estate shall be sold during the lives of my nieces, but at their deaths can be sold in order to make distribution to heirs."

On the 7th day of April, 1885, an account was stated by J. L. Cockins, one of the executors, which embraced only the personalty, and showing a balance of $833.66 for distribution under the residuary clause of this will. This balance included a bond of $500.

The real estate conveyed by the same clause consists of about sixty-eight acres, situate now almost entirely within the limits of the borough of Canonsburgh, estimated to be worth $40,000.

On the 9th day of June, 1885, Miss Martha J. Henderson and Mrs. Frances M. Weir, two of the residuary legatees, presented their petition to the court, setting forth that under the residuary clause in the said will they take an estate in fee in the said real estate, and an absolute estate in the personalty now for distribution, and praying for a citation upon the executors, J. L. Cockins and Elizabeth R. Harper, to appear and show cause why the interest or shares of the said petitioners in said amount for distribution, should not be paid to them without requiring them to give bond.

To this petition an answer was filed by the executors on the 1st day of July, 1885, denying the right of the said petitioners to receive the said personalty without bond, for the reason that the estate conveyed to them by the said will is only a life estate.

The case was heard upon petition and answer.

The court (HART, P. J.) delivered the following opinion, making the rule absolute.

In the first part of the disputed clause of Matilda Hutchinson's will it is clear that there is a gift of the residuum of her estate to her three nieces for life, with remainder to their heirs. Under the rule in Shelley's case, therefore, they each take a one third interest in the real estate in fee, and one third of the personal estate absolutely, unless it clearly appears from the latter part of the same paragraph that the testatrix did not use the word heirs in its technical sense.

The language of this portion of the will is, " I also bequeath the balance of my estate, real and personal, to my three nieces [naming them], share and share alike, during their lives, and at their deaths to go to their heirs in equal amounts to all heirs living at the time of their deaths. I also decree that no part of my real estate shall be sold during the lives of my nieces, but at their deaths can be sold in order to make distribution to heirs."

It was not claimed at the argument, by counsel on either side, that this language can be so construed as to make the devisees joint tenants of the real estate, with the peculiar incident of survivorship. And, indeed, no such estate, since the Act of 1812, can be created by deed or will, unless, possibly, by the most clear and express terms, as is shown by THOMPSON, J., in Seely *v.* Seely. 8 Wr. 434.

But it is contended by counsel for the acting executor that the effects of the words "to go to their heirs in equal amounts to all heirs living at the time of their deaths," is to take the case out of the rule in Shelley's case, and to limit the estate devised to the petitioners to a life estate, with remainder over. This is claimed to be, in particular, the force and meaning of the words "in equal amounts," as denoting a mode of distribution not according to the intestate law; that is, a distribution *per capita* instead of *per stirpes.* It is to be observed, however, that the limitation over, if such it is, is to "their heirs;" that is, to the heirs of the devisees, and not to those of the testatrix. It would follow, then, that there could be no distribution until after the death of the last survivor of the three nieces (for *nemo est haeres viventes*), and that after the death of each of the two, first dying, her interest in the freehold would either be in abeyance, or else would pass to the heirs at law of the testatrix, to be held and enjoyed by them until the death of the last surviving niece. This construction is, therefore, as I think, clearly erroneous, since it not only violates cardinal rules of interpretation, but ignores the manifest intention of the testatrix to make a full and complete testamentary disposition of all her estate, real and personal.

The only other construction which suggests itself is that contended for by counsel for petitioners, to the effect that not only do the nieces take a fee simple by the terms of the first part of the devising clause, but that there is nothing in the subsequent portion of that clause which demonstrates any other intention on part of the testatrix. The most probable interpretation of the entire clause I take to be this, that the testatrix gives the residuum of her estate to her three nieces for life, with remainder to their heirs. But as she devises the estate to them "share and share alike," that is to say, equally, so she intends that the same equality shall be observed in the transmission to the heirs, and that, as each niece was to take an equal third her heirs were to inherit the same interest, without respect to their number as compared with those who might inherit from either of the other devisees, which is merely equivalent to directing that the heirs of the nieces respectively, should take *per stirpes*, or, in other words, according to the intestate law.

At all events the word "heirs" is always to be presumed to have been used by a testator in its technical sense, and to be regarded as a word of limitation, and not of purchase, unless it very clearly appears that it was used and intended by him in some other sense; and, to say the least, no such clear intention is manifest on the face of the will.

I hold, therefore, that the petitioners took under its provision a fee simple in the real estate devised to them, and one third each of the personal estate absolutely.

I do not understand the learned counsel for the executor as claiming that the estate in fee, if such is the devise, is affected by the subsequent clause forbidding a sale of the real estate until after the deaths of the nieces. Certainly nothing is better settled than that a testator, after devising an estate in fee simple, cannot strip it of one of its most essential and valuable incidents, by prohibiting its free alienation by sale, gift, or devise. Although such attempts to clog an absolute fee are frequently made by testators, they are never allowed to succeed.

From what has been said it follows that the petitioners are entitled to receive from the executor their respective shares of the personal fund in his hands, without giving security therefor. In regard to the $500 bond mentioned in the answer, its value can, doubtless, be agreed upon, and no reference need be made to it in the decree, which is now to be entered.

And now, August 15th, 1885, the rule on the executors is made absolute, and it is ordered that the said executor, after deducting the costs of this rule from the amount of the personal fund in his hands, pay over the one third of the remainder thereof to each of the petitioners, viz., Mattie J. Henderson and Mrs. F. M. Weir.

Whereupon the said J. L. Cockins and Elizabeth Harper, executors, took this appeal, assigning for error the decree of the court.

*L. McCarrell*, for appellants.—It was held by the court below that the appellees take under the rule in Shelley's case.

Where there are circumstances which take the case out of the letter of this rule, it is departed from in favor of intention, because the reason of the rule has ceased: Findlay *v.* Riddle, 3 Binney, 154.

In the will under consideration by the words added to "heirs," is shown that the testatrix did not intend to use the word in its legal technical sense. There are many cases wherein the words *heirs of the body* have been determined to

be words of purchase: Wedgward's Case, 1 Rol. Ab. 837, pl. 13; Lisle *v.* Gray, 2 Lev. 223; Long *v.* Laming, 2 Burr, 1100; Guthrie's Appeal, 1 Wr. 13; Ellis *v.* Essex Merrimac Bridge, 2 Pick. 243; Middleswarth's Adm'r. *v.* Blackmore, 74 Pa. St. 414.

*John H. Murdoch*, for appellees.—The rule in Shelley's case operates on the intention of the testator after that intention has been ascertained by the ordinary rules of construction.

It must be presumed that the testatrix used words in their technical sense: Criswell's Appeal, 5 Wr. 290; Auman *v.* Auman, 9 Harris, 347.

The word heirs has a clearly defined meaning, viz., the persons upon whom the law would cast the estate in case of intestacy. Says STRONG, J., in Guthrie's Appeal, 1 Wr. 13, " To those words (" heirs," or " heirs of the body,") the law attaches a definite meaning. They are words of limitation and not of purchase. When used by a testator, the law presumes that he used them in their legal sense, that he intended not individuals, but quantity of estate, and descent." " But with us a 'gift to heirs, generally in fee, contemplates descent according to the intestate law:" Nice's Appeal, 14 Wr. 149. " Even in a will, supposed to be made when the testator is *inops consilii*, the word heirs has a fixed sense, which will adhere to it until it is explained away:" Auman *v.* Auman, *supra;* 2 Jarman on Wills, 61; Eby's Appeal, 3 Norris 241; Yarnall's Appeal, 20 P. F. S. 335; Doebler's Appeal, 14 P. F. S. 9.

We are unable to see how the direction, that no sale shall be made until after the death of the three nieces, in any way adds to the force of the words in equal amounts. But such a direction is absolutely void and of no effect in modifying the force of the devise, as is clearly shown in Doebler's Appeal, 14 P. F. S. 9; Jauretche *v.* Proctor, 12 Wr. 466, and Kepple's Appeal, 3 P. F. S. 211.

Equally unavailing, both on reason and authority, is the appellant's argument upon the use of the word "living." The question is definitely settled by Criswell's Appeal, 5 Wr. 288, in which case this court refused to permit the word heirs to be changed to a word of purchase by the use of the words " then living."

Mr. Justice CLARK delivered the opinion of the court, January 4th, 1886.

In the determination of this case, we adopt the views expressed in the opinion of the learned judge of the court below. We can see nothing in the will which indicates that the word

[Ford v. Buchanan.]

"heirs" was used by the testatrix in any other than its technical sense. It is clear that the doctrine of survivorship, as incident to a joint tenancy, can have no application in the case. It is equally plain that the testatrix contemplated a full and complete testamentary disposition, to take effect at her death, upon the decease of any one of the nieces; therefore she did not intend that her interest should be held by the others, either in the right of survivorship or under the intestate laws.

She, doubtless, did intend to do just what is plainly expressed in the will, viz., to give the residuum of her estate, after payment of the special legacies, to her nieces, named, for life, with remainder to their heirs in fee, and this, under the rule referred to, is an absolute estate in the first takers. The devise to the nieces was in equal shares, and the testatrix was careful to provide that the heirs of each should inherit these shares respectively. For the reasons more fully assigned in the opinion of the court below,

The decree is affirmed.