# Breinig *v.* Oldt, Appellant.

*Wills—Devise—Trust and trustees—Rule in Shelley's case.*

Testator gave and devised to his son two farms "to have and to hold the same, possess and enjoy the same for and during the period of his natural life, the said life estate not to be subject to any debts, engagements or liabilities which he may contract in future or may have contracted in the past. Upon the decease of my said son the principal or the two farms of land aforementioned shall vest absolutely in the heirs of the body of my said son share and share alike forever. And in case of the death of any one or more of said heirs of the body of my son, prior to said son's death, such one share or shares shall vest in their respective issue or heirs of their respective bodies." *Held,* that the son took an estate in fee simple in the land devised to him.

Argued Dec. 7, 1910. Appeal, No. 98, Oct. T., 1910, by defendant, from judgment of C. P. Northampton Co., April T., 1910, No. 22, for plaintiff on case stated in suit of Joseph S. G. Breinig and Mary A., his wife, *v.* Charles F. Oldt. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Case stated to determine the marketable title to real estate.

SCOTT, P. J., filed the following opinion:

The question in the case submitted is whether the plaintiff has a good and marketable title to convey in fee simple a certain parcel of real estate included in this devise by his father's will dated May 26, 1903, and probated in 1906.

"Item. I give and devise unto my son, Joseph S. G. Breinig, my real estate, wheresoever the same be situate, including the two farms in Allen Township, Northampton County, Pa., containing two hundred and fifty acres more or less; to have and to hold the same, possess and enjoy the same for and during the period of his natural life, the said life estate not to be subject to any debts, engagements or liabilities which he may contract in future or may have

contracted in the past. Upon the decease of my said son
Joseph G. Breinig the principal or the two farms of land
aforementioned shall vest absolutely in the heirs of the
body of my said son share and share alike forever. And
in case of the death of any one or more of said heirs of
the body of my son, prior to said son's death, such one
share or shares shall vest in their respective issue or heirs
of their respective bodies."

Under the facts stated, if the plaintiff has a title in fee,
judgment is to be entered for him in the sum of $250, other-
wise for defendant. It is not set forth who was living at
the death of the testator or now, but the devisee is the
living party plaintiff.

It is urged that there is here an interest in the nature of
a spendthrift trust and the creation of an equitable estate
which will not unite with a legal one in a fee simple title
by operation of the rule in Shelley's case: Xander v. Easton
Trust Co., 217 Pa. 485.

There is no trustee named to hold the life estate, nor is
the executor invested with any functions other than the
usual and ordinary administration and settlement: Sheets'
Est., 52 Pa. 257, 266. It is the case simply of a devise to
plaintiff of an absolute legal freehold estate with a pur-
pose expressed to prevent it from being subject to seques-
tration from his debts. This cannot be done: Hahn v.
Hutchinson, 159 Pa. 133; Ehrisman v. Sener et al., 162
Pa. 577; Kaufman v. Burgert, 195 Pa. 274. "A man shall
not be the real owner of property with the full right to
deal with it as he pleases, taking the full income of it to
his own exclusive use and keep the same free from the
claims of his creditors. What he cannot do for himself in
this regard, cannot be done for him by another. When
the grant comes from another, and yet has these incidents,
it is as obnoxious to the foregoing objections as when it
arises upon his own grant to third persons as trustees for
him:" Hahn v. Hutchinson, 159 Pa. 133, 141. This rule
was reasserted and the authority of this case approved in
Wanner et al. v. Snyder, 177 Pa. 208, but not applied, be-

cause the life tenant was not the absolute owner of the legal estate; and again in Nolan v. Nolan, 218 Pa. 135, under a deed of settlement in trust.  The rights of creditors are not involved in the present dispute, but as it was recently said in Morgan's Est. (No. 1.), 223 Pa. 228, where a spendthrift trust for a husband was created by the will of a married woman, and the trustee named was required to convey in fee upon demand of the donee, the husband took an absolute estate in fee simple, because the result is not dependent upon the exercise of the right.  "It determines the quality of the donee's estate."

By an unbroken line of decisions some things are definitely settled in respect to the application of the rule in Shelley's case in the limitation over of an estate expressed to be for life.  It is not employed to discover an intention of the testator; but if it be first ascertained from the will that it was his intention to designate the "heirs" or "heirs of the body" qua heirs of the devisee or grantee instead of becoming the root of a new line of descent pointing thus to heritable succession and not individual acquisition, then it is inflexibly applied as a rule of property irrespective of his actual purpose, and no matter how plainly he may have expressed it: Doebler's App., 64 Pa. 9.

A devise to one for life, with remainder to the "heirs of his body," without further limitation or description, is to be taken as conclusive of his intention that they shall take as heirs of the devisee, and such a remainder over to his "child" or "children" is presumptively a title by purchase.  The context sometimes may show it clearly to be otherwise.  But the limitation here is to the heirs of the body "share and share alike."  Estates tail descended as at common law and were not embraced within the intestate Act of April 8, 1833, P. L. 315, nor the earlier ones of 1705 and 1794: Guthrie's App., 37 Pa. 9.

If this were a limitation over to the "heirs" importing an estate in fee, instead of one in tail, these words of distributive modification "share and share alike" would have no significance.  When the law of primogeniture was dis-

carded this word in Pennsylvania was not limited to the heir at common law, but refers to our system of descent and remainder-men would take distributively in any event under the intestate law: Physick's App., 50 Pa. 128, 136; Nice's App., 50 Pa. 143; Steiner v. Kolb, 57 Pa. 123; Ogden's App., 70 Pa. 501, 509; Appeal of Cockins & Harper, 111 Pa. 26; Carson v. Fuhs, 131 Pa. 256.

It is maintained, however, that as estates tail descended as at common law and were not included in the acts providing for intestacy, a direction that the heirs of the body of the devisee should take share and share alike would mean nothing if it were not intended they should take as a new root of succession and thus by purchase from the testator, rather than as heirs by descent from the devisee. But it has always been held that this and similar provisions for division, in the absence of further limitation, are sufficient to overcome the presumption that the testator in the employment of the technical phrases which create an estate tail intended his testamentary disposition to have his legal effect: Curtis et al. v. Longstreth, 44 Pa. 297; Nice's App., 50 Pa. 143, 148; Guthrie's App., 37 Pa. 9, 17. Whatever importance attached to such qualification upon devises in England (vide Physick's App., 50 Pa. 128, 136) can have no application here since the Act of April 27, 1855, P. L. 368, sec. 1, converting an estate tail into the absolute interest of a fee simple, "and as such shall be inheritable and freely alienable," the descent of which for all estates devised since the enactment must be comprised within the intestate law of 1833. The reasons, therefore, which have been given in a multitude of cases for declaring that words of distributive modification alone shall not prevent the application of the rule in Shelley's case to invest the devisee with a fee, must as well be referable now to that which before the statute would have been an estate tail. In many of the earlier cases and in some of the later ones, it will be noted as they are read that although the decisions may be sometimes comparatively recent they are based upon devises where the testator's will took ef-

fect prior to 1855. In Guthrie's App., 37 Pa. 9, 17, Mr. Justice STRONG assumes that such words would lose their effect in illustrating the intention of the testator if a fee tail was embraced in the intestate law of 1833 for distribution, and then proceeds by elaborate discussion to show it was not.

There is, however, in this will a superadded limitation which, together with these words of equal division it is supposed determines, according to some of the authorities, that the remainder-men take as purchasers and defines the estate of the plaintiff as one for life: Findlay v. Riddle, 3 Binn. 139; Abbott v. Jenkins, 10 S. & R. 296; Nebinger v. Upp, 13 S. & R. 65; Powell v. Board of Domestic Missions, 49 Pa. 46; Robins v. Quinliven, 79 Pa. 333. "Alone, neither of them is sufficient:" Nice's App., 50 Pa. 143, 148. One important observation is to be made about such as are now cited in addition to other reference again, that the will in each was probated before the act of 1855, except in Robins v. Quinliven, 79 Pa. 333, in which it was conceded that if the testator by the word "issue" meant "heirs of the body," as primarily it does, the devisee took an estate tail. If the words "share and share alike" have no significance since an estate tail is included in the statutory law of descent, they add nothing now to the effect of the further limitation over, and "superadded words of limitation alone have always been held insufficient:" Physick's App., 50 Pa. 128, 136. The addition of nought to any factor does not give it further efficiency than it had before acquired. But in each one of the cases submitted or examined where the two combined were held sufficient to convert a limitation over to the heirs of the body into a life estate, as expressed in the will, the superadded limitation alters or narrows in some particular the course of descent: George v. Morgan, 16 Pa. 95; Hileman et al. v. Bouslaugh, 13 Pa. 344. It is thus illustrated by Mr. Justice STRONG in Powell v. Board of Domestic Missions, 49 Pa. 46, 53: "In Backhouse v. Wells, 1 Eq. Cas. Abr. 184, pl. 27, cited in 1 Fearne on Remainders (4th Am. ed.),

153, a devise to one for life only and after his death to the issue male of his body, and to the heirs male of the bodies of such issue was held to be an estate for life in the first taker. Here the presumption arising from the use of the word issue was rebutted by the restrictive word only attached to the gift of the life estate, and by the fact that words of limitation were added to the devise in the remainder to the issue male. These circumstances would have been entirely insufficient had the devise to the remainder-men been to them by the words 'heirs of the body.' '' To bring a devise within the rule in Shelley's case, the limitation in remainder must be to the heirs, in fee or in tail, as a nomen collectivum for the whole line of inheritable blood: Kuntzleman's Est., 136 Pa. 142. This result is produced by the superadded words of limitation here; and irrespective of the act of 1855, as the law of primogeniture has no existence in Pennsylvania, the limitation of one equal share to each heir of the body of the devisee, and in case of the prior decease of any, then to his heirs of the body does not alter the course of descent as if the word "heirs" alone had been employed. In Grimes v. Shirk, 169 Pa. 74, where many cases are largely discussed in an opinion by Judge LIVINGSTON, which the Supreme Court characterized as able and exhaustive, "tenants in common" as words of distributive modification together with a superadded limitation were held insufficient to prevent the operation of the rule that the tenancy for life was enlarged into a fee. It has been cited with approval many times since by both appellate courts, and Challis in the Law of Real Property, 134, summarizes the fundamental propositions established by the rule in Shelley's case, one of which is "The further addition to the word 'heirs' of words of limitation to their heirs does not prevent the application of the rule, if the latter heirs are of the same description as the former heirs: Shelley's Case, 1 Coke, 93a; 1 Fearne on Remainders (4th Am. ed.), 181, V. 26; 1 Pres. Est. 347."

We have, therefore, without these additions which do

not extend its meaning, a devise for life to the plaintiff with remainder to the heirs of his body which enlarges his tenancy for life into an estate tail, and then becomes a fee simple by the act of April 27, 1855.

The operation of the rule in Shelley's case to defeat the real intention of the testator in many instances was fully vindicated as a rule of property by Chief Justice GIBSON in Hileman et al. v. Bouslaugh, 13 Pa. 344, 351, and again by Judge PORTER in McGregor v. Davidson, 14 Pa. Superior Ct. 230.

None of those who are designated as remainder-men are parties to this proceeding, and are not, of course, concluded by the judgment as in ejectment upon the title. It may be noted that following the decision of Grimes v. Shirk, 169 Pa. 74, upon a case stated like this, an action of ejectment was brought against a vendee of Charles F. Bright in his lifetime by the guardian of his two minor children to recover lands devised to him under the same will and identically similar clause as that of the plaintiff in Grimes v. Shirk, 169 Pa. 74, asserting their father did not have title in fee. The Supreme Court said: "The defendant having purchased the land for which ejectment was brought in reliance upon the decision of the Court in Grimes v. Shirk, 169 Pa. 74, his title cannot now be questioned:" Bright v. Esterly, 199 Pa. 88.

Now, April 18, 1910, judgment is entered for the plaintiff on the case stated and against the defendant for the sum of $250 and costs.

*Error assigned* was the judgment of the court.

*A. C. Labarre*, for appellant.

*C. F. Smith*, of *Smith, Paff & Laub*, with him *Thomas D. Danner*, for appellee.

*W. H. Kirkpatrick*, of *Kirkpatrick & Maxwell*, with him *George R. Booth*, for Jeremiah F. Hahn, guardian of the minor children of Joseph S. G. Breinig.

Per Curiam, March 3, 1911:

The judgment is affirmed upon the clear and satisfactory opinion of the learned president judge of the common pleas.