Williams, J.,
The question on which this case depends is what estate did Alexander McDonald take under the will of his father, John McDonald, Sr.? The will appears to have been drawn by the testator, and, although ina'rtificially worded, shows a well-settled plan of distribution in every part. In order to a proper determination of the question before us, it is necessary, therefore, to examine the will as a whole, with a view to discover the general scheme on which it proceeds.
The testator left to survive him a widow, six sons, and four daughters, for whom the will makes provision. To his widow, he gave a life-estate in one-half of his home plantation, with various bequests of money and other personal chattels. Subject to the life-estate in his wife, he devised the homestead plantation and several *491 adjoining tracts of land to his sons, James and Edward, for life, and, in case either of them died without “ heirs begot in lawful marriage bed, deceased’s land is to fall to the living brother and his heirs.” He then took up the devise to James, and stated its terms more fully. He declared that James was to have the power to appoint by his will the land so devised to him for life “ to any of his sons that he thinks most worthy and their heirs forever.” If James should fail to appoint, then the testator directs that the land be equally divided among his (James’s) “ sons for the use of them and their heirs forever.” If James should die without sons, but leaving daughters, then the testator’s direction is that the land “ be equally divided among his daughters, their heirs and assigns forever.” Having thus made provision for the disposition of the fee after the termination of James’s life-estate, he proceeds to take up the devise to Edward, and to express his purpose in regard to it, by adopting the limitations just expressed in the devise to James, by the following reference-clause: “ Item. Son Edward. I will and leave him his land on and in the same manner and way and under the same incumbrance that I have left my son James his land.” Next follows the devise to Alexander of lands called Nutfield and Smithfield, “in the same manner and way I have left my son James his land, and under the same incumbrance.” The devise to Andrew follows that to Alexander, and refers for its terms also to the devise to James. That to John is in the same form, except as to one house, which is given in fee. William, the remaining son, he passes over, devising the land intended for his support to his children in fee, with direction that it shall not be disposed of during the lifetime of their father.
Having thus disposed of the six sons, he turns to his daughters, and, beginning with Margaret, the eldest, he devised land to her for life, with remainder over to her children in fee. He then made devises to Martha, Elizabeth and Mary, successively, to hold “ in the same manner and way I have willed my daughter Margaret her portion of land.”
It will thus be seen that the testator, having written out at length the devise to James, made it the model upon which, by a reference-clause, the devise to each of his other sons was constructed; and in like manner having fully expressed his will as to the disposition of Margaret’s portion, he made use of it by a reference-clause to supply the terms of the devise to each of her sisters.
As to both sons and daughters, his purpose was to limit them to the enjoyment of the income and occupation of the lands devised, and to preserve for and secure to his grandchildren the fee. In the case of the sons, the remainder, on failure to appoint, was to their sons; on failure of sons, to their daughters; and, on failure of both sons and daughters, then over. In the case of the daughters, the remainder was to their children generally. If one of the daughters should die leaving no children, her share was to be divided among not her surviving sisters, but the children of such sisters.
*492 So far we encounter very little difficulty in ascertaining the intentions of the testator; but, in the event of the death of one of the sons, to. whom the devise is made by a reference-clause in that to James, with neither sons nor daughters surviving, what direction does the fee in his land take ? This brings us to the question in this case, and requires an examination of the devise to James. That devise was to James for life, with the provision that, if he left “ heirs begot in lawful marriage bed,” he might appoint to one or more of his sons. If he failed to appoint, then the fee should go to his sons equally; on failure of sons, to his daughters equally; on failure of both sons and daughters, to Edward and his heirs in fee. Was the estate of James, under these terms, an estate for life or an estate tail? It is contended that the estate of the children of James is an estate by implication, and that James becomes for this reason a tenant in tail. This argument is built upon that clause which provides that if James shall die without “ heirs begot in lawful marriage bed," his share shall go to Edward and his heirs. There is here no express devise to his “ heirs begot in lawful marriage bed,” but the terms of the limitation to Edward imply one. It is therefore argued that his children take an estate by implication, and that James becomes a tenant in tail. There would be much force in this position if this- was the only clause in the will on which the title of the children of James could rest; but, in a subsequent clause of the same devise, the testator gives the remainder to the children of James by express words, and fixes the order in which they shall take. Their estate is not left to implication, but is expressly given in words which clearly show the purpose of the testator.
The argument based on the use of the words “ heirs begot in lawful marriage bed,” is equally inconclusive. Standing alone, these words would be equivalent to the word “ issue,” and would give some support to the theory that James became a tenant in tail of the lands; but, in the sentencés immediately following, the testator again expresses his intentions fully. He gives to James a power of appointment among his sons, and, on his failure to appoint, devises the land in fee to his sons, share and share alike; on failure of sons, then to his daughters in same manner; on failure of both, then over. Here we have a clearly expressed intention that the children of James should not take as heirs in tail take at comrnon law, and also that they should not take-from James, or as heirs of James, but as the devisees of the testator. These two purposes, sufficiently expressed, will control even such words as “heirs of the body,” and convert them into words of purchase. Powell v. The Board of Miss., 49 Pa. 46; Guthrie’s Appeal, 37 Pa. 9.
But in the case under consideration, we are not left to grope after the intention of the testator by the light of inference or presumption, for he has declared expressly what his intention is in relation to the destination of the fee in the lands given to James for life. It is to vest it not in the “ issue ” or in the “ heirs of the *493 body ” of James, but in his sons only, and in equal shares if he shall leave sons surviving him. The daughters are excluded unless there be a failure of sons, in which case they are to take in equal shares. If there be a failure of both sons and daughters, then to Edward.
The words “sons” and “daughters” are descriptive of the persons who are to take, and are clearly words of purchase, and not of limitation. This is made, if possible, more apparent by the words of distributive modification'which are used in the same connection; so that we are very clear that James did not take an estate-tail in the lands devised to him, but an estate for life only. Had he left sons to survive him, they would have taken under the will as purchasers, and not from their father as heirs..
Coming, now, to the devise to Alexander, which was moulded after that to James, we find the reference-clause to be in these words: “ In the same manner and way I have left my son James his land, and under the same incumbrance.” For the manner and way in which Alexander should take and for the limitation over, or, in the language of the testator, the “ incumbrance ” under which he should take, we must look to the devise to James. James took a life-estate, and the estate of Alexander is therefore a life-estate. James had a power of appointment among his sons, and this is carried over to Alexander by the reference-clause. In default of appointment, the sons were to take under the will; in default of sons, the daughters; in default of both sons and daughters, then over. The fee after Alexander’s life-estate took the same direction; in default of appointment, to his sons; in default of sons, to his daughters; in default of both, then over.
It is objected that a reference-clause can be resorted to only to determine what estate the devisee shall take, but not to determine who shall take. Whether this be so or not depends upon the character of the clause, and the connection in which it stands. The rules in regard to the effect of a clause of reference are rules of interpretation and are to be resorted to for aid in ascertaining an intent, not otherwise evident, but cannot be allowed to prevail over an evident intent. It was held in 2 Beav. 276, and other cases collected in the note on page 348 of the 2d vol. of. Jarman on Wills, that when the principal gift is to one for life with remainder over, another gift to another person to take “ in the same manner ” will generally import the same limitations.
So is Surtees v. Hopkinson, L. R. 4 Eq. 98, gifts in settlement to several stocks, the first fully expressed, with ulterior trust for the other stocks and the other gifts being “ on like and corresponding trusts were read mutatis mutandis.”
These cases rest on reasons that are made quite clear by the will before us. How could the evident intention of the .testator be carried out if we should refuse to make use of the reference-clause to determine who should take ? There is no other method of designation to be found in the will. In the devise to Margaret, he limits *494 the fee to her “ children,” and, in the devise to each of his other daughters, he refers to the devise to Margaret for all the terms and limitations on which she is to take and her children after her. If the clause of reference is not to be used to determine who shall take, as well as what interest or estate is to be taken, then, as to all the daughters, except Margaret, he has made no provision for their children, or the fee in their portions of his land. The same thing is true of all the sons, except James and Edward., If the reference-clause cannot point out the remainderman, then the remainder is undisposed of by the will. The remainder over to Edward on the death of James, without children, stands in a clause not immediately connected with that wherein the power of appointment is conferred and the devise to sons, and, on failure of sons, to daughters is made.. For this reason we are asked to hold that if the reference-clause be held to import into the devise to Alexander the power of appointment and the devise to his sons, and, in default of sons, to his daughters, it does not import into it the remainder over to Edward and his children. But the reference-clause embraces all the conditions and limitations put upon the land given to James for life, whether they stand in immediate connection or not. He was to take in “the same way and manner and under the same incumbrance” that James took his portion. What that “ way and manner ” may be, and what the “incumbrance” or limitation over may be, must be gathered from all the clauses of the will that contain them, whether they stand in consecutive paragraphs or not.
Our conclusion, then, is that Alexander McDonald took an estate for life in the lands called Nutfield and' Smithfield, with a power of appointment among his sons, and, on failure of appointment, then to his sons, and so on, in exact conformity to the provisions regulating the disposition of the share of James. As he had neither son nor daughter in whom the remainder could vest at the time of his death, that remainder, following the limitation in the devise to James, went over to Edward and his children in fee simple. The plaintiffs are the children of James, and they claim both as heirs-at-law of the testator and of their father.
Under the view we take of this case, thay have no interest in the land in controversy in either capacity. If, however, the question was involved in serious doubt, we should feel inclined to adopt the view so clearly presented by Ex-C. J. Agnew, in his argument in the paper-book of defendant in error, as to the effects which should be given to delay and acquiescence in an interpretation put on this will a half century or moi'e ago.
Judgment affirmed.