## Powell *versus* The Board of Domestic Missions.

*Creation of life estate by devise.*

A devise "to my son A. C., the use and profits of my messuages and lands in N., with the appurtenances, for the term of his natural life, and after his decease, if he shall die leaving lawful issue, then to said issue, if one, to him or her, his or her heirs and assigns forever, but if more than one, to be equally divided amongst them, their heirs and assigns forever," and in default of lawful issue of his son, to be sold, and the proceeds considered part of his estate to be divided as hereafter directed, creates only a life estate in A. C.

ERROR to the Common Pleas of *Montgomery county.*

This was an amicable action in covenant, between the Trustees of the Board of Domestic Missions as plaintiffs, and Samuel D. Powell as defendant, in which the following case was stated for the opinion of the court:—

Oliver Carson, late of the township of Plymouth, in the county of Montgomery, Pennsylvania, did, by his last will and testament duly proven, dated February 5th 1842, and remaining on file in the office of the register of wills, &c., of the county of Montgomery, devise, among other things, as follows, to wit: "Item, I

give unto Alexander Carson, whom I brought up, and *who* I acknowledge as my son, the uses and profits of my messuage and lands, with the appurtenances, in the borough of Norristown, for the term of his natural life, and after his decease, if he shall die leaving lawful issue, I give and devise the said messuage and land, with the appurtenances, to the said lawful issue, if one, to him or her, his or her heirs and assigns for ever, but if more than one, to be equally divided amongst them, their heirs and assigns for ever. But if my son Alexander shall die without lawful issue, then I direct said messuage, land, and appurtenances to be sold by my executors, and the proceeds of said sales to be considered as part of the residue of my estate, and given as is hereinafter directed."

The said Alexander Carson entered into possession of the said premises under the said devise, and on September 2d 1846, by deed duly executed, and therein expressed to be for the purpose of barring the estates tail, &c., and duly acknowledged agreeably to the laws of this Commonwealth, and in open Court of Common Pleas in and for the said county of Montgomery, on motion duly entered on the records of said court on the said 2d day of September 1846, in the manner commonly used with respect to sheriff's deeds, and also duly recorded in the office of the recorder of deeds in and for the said county, being the same county in which the lands and tenements thereby granted lie, on the 3d day of September, A. D. 1846, granted and conveyed the same premises to Isaac Roberts, his heirs and assigns for ever, in the same manner and form of conveyance as if he, the said Alexander Carson, had been seised thereof in fee simple, and the said Isaac Roberts being a *bonâ fide* purchaser of the said premises for a good and valuable consideration.

By virtue of divers mesne conveyances the title in part of the said lands so acquired by the said Isaac Roberts under the said deed from Alexander Carson, became vested in the said trustees, &c., the plaintiffs, to wit, in all that certain mansion-house, coach-house, and lot of land situate in the borough of Norristown, Montgomery county, Pennsylvania, bounded and described as follows, to wit (here followed a description by metes and bounds): containing about three acres of land, more or less. (Being the same premises which the Hon. Hamilton R. Gamble and wife, by deed dated March 11th 1862, recorded at Norristown in Deed-Book No. 125, page 398, &c., conveyed to the said plaintiffs.)

The said Alexander Carson is still living, and has issue, born after the death of the said Oliver Carson, and since the execution of the said deed to bar the entail.

On the 1st day of September, A. D. 1864, the said The Trustees of the Board of Domestic Missions of the General Assembly of

[Powell *v.* Board of Domestic Missions.]

the Presbyterian Church in the United States of America, covenanted in writing, under seal, with the said defendant to convey to him, on the 28th day of the same month, the said above-described premises, in fee simple, clear of all encumbrances, for the price of $6500, and on the said last-mentioned day offered to execute and deliver to the said defendant a deed for the said premises in fee simple, upon payment of the said purchase-money in conformity with the terms of the said contract.

The said defendant declined to accept the said conveyance, or to pay any part of the purchase-money, on the ground that the title of the said corporation plaintiffs in the said lands was only an estate for the life of the said Alexander Carson, and that they were therefore unable to make him a good title to the same in fee simple.

If the court should be of opinion that by virtue of the will of the said Oliver Carson, and the deed of said Alexander Carson, the said Isaac Roberts acquired an estate in fee simple in the said lands, judgment to be entered for the plaintiffs for $100; otherwise judgment to be entered for the defendant—the costs to follow the judgment.

The court below, after argument, decided in favour of the plaintiffs, and directed judgment to be entered in the case in their favour for the sum of $100, with costs, which was accordingly done; whereupon this writ of error was sued out by the defendant, who averred here—

1. That the court erred in rendering judgment in favour of the plaintiffs in the case stated; and

2. That the judgment in the case ought to have been in favour of the defendant.

*D. H. Mulvany,* for plaintiff in error.—If the testator had used the word " children," instead of " issue," the case would be precisely like Cote *v.* Miltenberger, 5 Wright 243, and Curtis *v.* Longstreth, 8 Id. 297, in which it was held that the first taker had an estate for life only, with remainder to his children as purchasers, and that it was not an estate tail.

The question then is, whether, in the case of a devise like the one in question, the word " issue" is not synonymous with " children."

That it is so in all cases where it would be consonant to the intention of the testator, is a well-settled rule of construction : Greenwood *v.* Rothwell, 5 M. & G. 628; Slater *v.* Dangerfield, 15 M. & W. 263; Abbott *v.* Jenkins, 10 S. & R. 298–9. These cases show that the word "issue" is not always regarded as a word of limitation, but that when it is intended to mean children, it is a word of purchase. See Gernet *v.* Lynn, 7 Casey 99.

The general principle to be extracted from the cases collected

in 1 Jarman on Wills, and 2 Id. 171, *et seq.*, is that the word "issue" is either a word of limitation or of purchase, as best effectuates the intention of the testator.

The intention of the testator that his adopted son, Alexander, should take an estate for life only, and not an estate tail, is clearly apparent. He does not in terms devise the messuage and lands to him for life at all, but only the "use and profits," and although it is conceded that he would take for life, yet at the same time the words are indicative of an intention that he should take nothing more than an estate for life. Then, in disposing of the remainder, the word "issue" had obviously, in the mind of the testator, the same meaning as "children." "To the said lawful issue, if one,"—meaning one child,—"to him or her,"—which could only mean his son or daughter,—"his or her heirs and assigns for ever, but if more than one, to be equally divided amongst them, their heirs and assigns for ever." The gift is to them distributively,—equivalent to them "as tenants in common" or to their heirs. This shows an intent that they should not take as heirs of the tenant for life. See Guthrie's Appeal, 1 Wright 9.

The additional words, "their heirs and assigns for ever," also show that the word "issue" was used as a word of purchase, and to designate the persons who were next to take. See Ludding-ton v. Kime, 1 Ld. Raym. 205; Findlay v. Riddle, 3 Binn. 139. The cases of Williams v. Leech, 4 Casey 89, and Price v. Taylor, Id. 95, which were supposed to militate against Findlay v. Riddle, were overruled in Guthrie's Appeal, 1 Wright 22. The case at bar is free from the difficulties which sometimes arise in cases where no words of inheritance have been coupled with a limita-tion to the "issue," for here there are such words,—"and to their heirs and assigns for ever,"—thus showing the intent to be, that the issue of Alexander, alive at his death, should take a fee.

There are other provisions in this will indicative of the same intention—and showing, too, that in using the words "if he shall die leaving lawful issue," the testator meant, not an indefi-nite failure of issue, but children living at the death of the first taker. "But, if my son, Alexander, shall die without lawful issue, then I direct said messuage, land, and appurtenances to be sold by my executors, and the proceeds of said sales to be considered as part of the residue of my estate, and given as is hereinafter directed."

It is impossible to decide that the first taker had an estate tail, without ignoring this provision altogether—and to do so would be contrary to one of the best settled rules of construction, to wit: that effect shall be given to the whole will, if possible;

in other words, that "no will ought to be construed *per parcella*, but by the entirety."

The rule in Shelly's Case, relied upon by the plaintiff, does not apply, because in this will there is not only a direction that the remainder-men shall take distributively, but words are superadded to work, in a certain contingency, a conversion of the estate : so that any presumption of limitation, arising from the use of the word "issue," is effectually rebutted by the repugnant provisions for distribution and conversion. See Smith on Executory Interests 237–242 ; Chew's Appeal, 1 Wright 27.

The case of Haldeman *v.* Haldeman, 4 Wright 29, will probably be relied upon by the plaintiff, but it seems to have been decided on the ground that an estate for life, with a remainder to the issue of the first devisee, without more, is an estate tail in law.

*G. R. Fox*, for defendants in error.—I. This is a devise of land to Alexander for life, enlarged by construction of law to a fee tail.

Those who are to take at his death are his lineal heirs, for that is the signification of the word issue. They are to take in the character of heirs, and because they are his heirs.

They are to take precisely as they would take if Alexander were seised in fee and died intestate.

The terms of the devise over are conclusive.

There is to be no sale until the issue of Alexander, if he have any, shall become extinct.

Nothing is more firmly settled, as a rule of property, than the legal interpretation of this expression. It invariably means (where there is no issue born at the date of the will), not a failure of issue at the death of the tenant of the particular estate, but an indefinite failure.

The sum of all the more recent authorities is, that where there is a general paramount intent, and a particular intent, the paramount intent shall prevail.

The paramount intent of this testator plainly was, that his land should not be sold, and the proceeds divided among his more remote kindred, so long as there should be in existence a lineal descendant of his son.

That son, the first taker, was in the eye of the law, as well as in fact, the primary object of his affection and bounty.

The devise to the son for life, and after his decease, if he shall die leaving lawful issue, to the said lawful issue, creates a technical estate tail. The words introducing the devise over, "if my said son shall die without lawful issue," have of themselves, ordinarily, the same effect. It is entirely settled that the words superadded to the devise to the issue, "if one, to him or

[Powell *v.* Board of Domestic Missions.]

her, his or her heirs and assigns for ever," cannot change the legal import of the word issue.

The only possible question in the case, therefore, arises from the words following: "but, if more than one, to be equally divided amongst them, their heirs and assigns for ever." But it is quite as well settled, that if the words "be equally divided amongst" were omitted from this clause, the effect of it would not be to change the word of limitation into a word of purchase.

It is therefore necessary to reject those four words, as inconsistent with the prior and subsequent limitation to the issue, and with the general scope of the devise, and as repugnant to the paramount intent, or to hold that the paramount intent of the testator was to give the estate to the issue of Alexander as purchasers in fee simple.

But for the succeeding words, "if he shall die without lawful issue," it would, perhaps, hardly be open to argument, that the estate of the first taker was greater than an estate for life.

The effect of those words, however, is not doubtful. Where the devise to the first taker is a fee simple, they reduce it to a fee tail. Where the devise to him is for life, they enlarge it to an estate tail. See Kay *v.* Scates, 1 Wright 31.

When the devise is of real estate, the words "die without issue," or, "in default of issue," or, "for want of issue," or, "on failure of issue," or, "die without leaving issue," import the same thing, to wit, an indefinite failure of issue. An estate tail would therefore be implied from the devise over, even if there were no gift of a remainder to the issue of a class.

In Potts's Appeal, 6 Casey 168, it is said that "any form of words, sufficient to show that the remainder is to go to those whom the law points out as the general or lineal heirs of the first taker, will enlarge the estate for life to an estate tail by implication." See also, Elliott *v.* Pearsoll, 8 W. & S. 38; Carter *v.* McMichael, 10 S. & R. 429; Paxson *v.* Lefferts, 3 Rawle 59; George *v.* Morgan, 4 Harris 107; Wynn *v.* Story, 2 Wright 166; Curtis *v.* Longstreth, 8 Id. 297; Rancel *v.* Creswell, 6 Casey 158; Haldeman *v.* Haldeman, 4 Id. 29; Cresswell's Appeal, 5 Wright 288; Jesson *v.* Wright, 2 Bligh 1; Jack *v.* Fetherston, 9 Bligh N. S. 237; Dodson *v.* Grew, 2 Wilson 322; Cock *v.* Hooper, 1 East 229; Ward *v.* Bevil, 1 Y. & J. 513; 3 Bos. & Pul. 627.

From all these, and the multitude of analogous cases of which the American as well as the English books are full, it is clearly to be deduced—

1. That the word issue, in a will, is uniformly construed a word of limitation, unless it appears unequivocally, leaving no room for doubt, that the testator intended it to be a word of purchase.

2. That a particular intent, although expressed by apt technical words, and often by words intended to exclude any other interpretation, must be sacrificed to a general intent.

3. That the words dying without issue, and the like expressions, import an indefinite failure, and imply an estate tail in the first taker, unless restrained by other words so plain that no one can misunderstand them.

Mr. Smith in his appendix to Fearne, § 488 c, observes, in reference to the rule in Shelly's Case, that "in the majority of the cases where it was most difficult to apply the rule, the courts were aided in their application of it, by the existence of a limitation over, on an indefinite failure of issue," &c., "and the courts, of course, gladly laid hold of the implication of a primary or paramount intention to admit all the descendants generally, or of the given description, so far as the rules of descent would permit, arising from such a limitation over, when there was any such limitation, rather than rest their decision in giving an estate tail to the ancestor, upon the single operation of the rule."

II. The cases cited and relied upon by the plaintiff in error, have all something to take them out of the general rule.

In Cote *v.* Miltenberger, in the second devise in Curtis *v.* Longstreth, in Guthrie's Appeal, and in Chew's Appeal, the word used was children, primarily a word of purchase.

In the English cases cited, either the devise was to children, or there was no devise over on an indefinite failure of issue.

Findlay *v.* Riddle is overruled by Heilman *v.* Bouslaugh, 1 Harris 344, and George *v.* Morgan, 4 Id. 95.

If in the devise to the issue here, the word were interpreted a word of purchase, and a child were born to Alexander during his life, the remainder in fee simple would at once vest in that child and the devise over be nugatory.

There is no force in that part of the argument for plaintiff in error, founded upon the direction that the lands be sold by the executors and the proceeds divided. Similar directions have been disregarded in numberless cases. See Criley *v.* Chamberlain, 6 Casey 161; Wynn *v.* Story.

The fact that the testator, in the devise of the residue, does not specifically name, nor in any way refer to the Norristown real estate, but that it is included in the very general expression, "my estate of every kind," shows how little he thought of the contingency of a sale of it, and division of the proceeds among the residuary legatees.

The opinion of the court was delivered February 13th 1865, by

STRONG, J.—The question in this case is, what estate Alexander Carson took under the will of Oliver Carson? The words

of the devise out of which the controversy arises are as follows: "I give unto Alexander Carson, whom I brought up, and whom I acknowledge as my son, the use and profits of my messuage and lands, with the appurtenances, in the borough of Norristown, for the term of his natural life, and after his decease, if he shall die leaving lawful issue, I give and devise the said messuage and land, with the appurtenances, to the said lawful issue, if one, to him or her, his or her heirs and assigns for ever, but if more than one, to be equally divided amongst them, their heirs and assigns for ever. But if my son Alexander shall die without lawful issue, then I direct said messuage, land, and appurtenances to be sold by my executors, and the proceeds of said sales to be considered as part of my estate, and given as hereinafter directed." In a subsequent part of the will the testator appointed executors, and directed the residue of his estate to be divided among eight persons, then living, whom he named.

Undoubtedly in a will the word "issue" is regarded as primarily a word of limitation, and as synonymous with the technical words "heirs of the body." Hence it is presumed that when a testator devises an estate for life, with a remainder to the issue of the devisee of that estate, he intends the remainder-men to take as heirs of the body by descent from their ancestor, rather than as purchasers, themselves the root of a new succession. This intent, however, is but a presumption. Even the strictly technical words "heirs," or "heirs of the body," may be shown by the context of the will to have been used as merely descriptive of persons, in which case they are regarded as words of purchase and not words of limitation. The intent of the testator to use them in such an abnormal sense, must, indeed, unequivocally appear, but when made thus to appear, it prevails over the legal presumption to the contrary arising from the use of words, which, unexplained, are words of limitation. In regard to this there is no doubt. And it is equally certain that by the same means the word "issue" may be shown to have been used as a word of purchase, meaning children, grandchildren, &c. Being not strictly a technical word, never a word of limitation, except when used in a will, it requires even less to overcome the presumption that a limitation was intended by its use than is demanded to rebut the presumption arising from the use of the words "heirs of the body." In Doe d. Cooper *v.* Collis, 4 T. R. 294, Lord Kenyon said, "In a will, 'issue' is either a word of purchase or of limitation, as will best answer the intention of the devisor, though in the case of a deed it is universally a word of purchase. In Backhouse *v.* Wells, 1 Eq. Ab. 184, p. 27, cited in Fearne on Remainders *105, a devise to one for life *only,* and after his death to the issue male of his body, and to the heirs male of the bodies of such issue, was held to give but

[Powell *v.* Board of Domestic Missions.]

an estate for life in the first taker. Here the presumption arising from the use of the word issue was rebutted by the restrictive word *only* attached to the gift of the life estate, and by the fact that words of limitation were added to the devise in the remainder to the issue male. These circumstances would have been entirely insufficient had the devise to the remainder-men been to them by the words 'heirs of the body.'" Upon this case Lord Chancellor Parker remarked that, if the words heirs male had been used instead of issue male, the operation of the law would have been too strong for the intention of the testator. Mr. Smith, also, in his Treatise on Executory Interests, p. 528, asserts that "there is a less degree of presumption against construing the word issue a word of purchase, than against construing the words heirs of the body to be words of purchase, and a still less degree of presumption against that construction of the word issue, than against the same construction of the word 'heirs' generally; so that, *primâ facie*, the word issue is more likely to be a word of purchase than the words heirs of the body, and still more likely than the word 'heirs' generally." So in Lessee of Findlay *v.* Riddle, 3 Binn. 160, Yeates, J., after remarking that heirs and heirs of the body have been restrained as words of purchase when the same were evidently used in a will in that sense, added, "they always give way with greater difficulty than the word issue." This case, however, does not call for reliance upon any distinction between the degrees of the presumptions which arise out of the use of the words issue or heirs of the body, for there is enough in the will of Oliver Carson to show unequivocally his intent to devise to the remainder-men as purchasers, even had he described them by the words "heirs of the body" of Alexander Carson. There are two directions in the gift of the remainder, each of which indicates, and which combined are decisive, that the word issue was used by the testator as a word of purchase, meaning children, sons and daughters, or descendants living at the death of the devisee, for life. They are *first*, that if more than one, the property should be equally divided between them, or if one, then to that one, and *second*, the added words of limitation in fee simple to the gift to the issue. If it was intended they should take as heirs of the body of Alexander Carson by descent from him, instead of taking directly from the testator, the added words of limitation "to their heirs and assigns for ever" can have no effect. And they are not merely superfluous. They are repugnant to any such intent. The issue of Alexander Carson cannot take as heirs of the body, and hold to them and their heirs generally. If they take by descent at all, they must take as tenants in tail, and so hold. Still more clear it is, if possible, that the direction that the issue shall take distributively, if one,

[Powell v. Board of Domestic Missions.]

to that one, if more than one, in equal division, is utterly inconsistent with their taking as heirs in tail of the devisee of the particular estate. These two expressed purposes of the testator show unmistakably his paramount intention to devise to them as the stock of a new succession, and not as heirs. Neither of them *alone* might be sufficient to overcome the presumption that he intended to use the word issue, in its primary sense, as a word of limitation, but *together* they are. Such is the doctrine of the authorities. Mr. Smith, in describing the modes in which "heirs of the body" have been reduced from words of limitation to words of purchase, mentions as one (p. 488), prescribing for the heirs, general or special, a distributive mode of taking and also superadded words of limitation. He adds, "the mere addition of words of distributive modification would be equivocal; for the grantor or testator might have erroneously supposed that the heirs might take in that character and yet in a partitive mode; but the engrafting of superadded words of limitation, besides the addition of the words of distributive modification, shows clearly that he meant by the first-named heirs the children of the ancestor, who are sometimes so termed as having the capacity of becoming heirs of the ancestor, either in succession, if males, or contemporaneously, if females. For this position he refers to several decisions, none of which, to my knowledge, have ever been questioned. They are Doe v. Lanning, 2 Burrows 1100; Crump v. Norwood, 7 Taunt. 362; Haller v. Ironmonger, 3 East 383, and Right v. Creber, 5 Barn. & Cres. 866. All of these sustain the doctrine. In the last-mentioned case there was a devise of land to trustees in trust to permit the testator's daughter to receive the rents to her own use for her life, and from and after her death he devised the same "unto the heirs of the body of his daughter, share and share alike, their heirs and assigns for ever." It was ruled that the words "heirs of the body," in the devise, meant children, and solely because of these added directions. So in ch. 13, rule 2, page 505, the same elementary writer says, "If there are any expressions clearly showing that by issue the testator meant children, or particular individuals among his descendants, or any expressions indicative of an intent absolutely inconsistent with, or not included in an estate tail in the ancestor, then the word issue will be construed a word of purchase, if the issue may take as purchasers consistently with the rule against perpetuities; and the ancestor will take an estate for life with a contingent or vested remainder, as the case may be." We have received and asserted the same rule of construction in this state: Findlay v. Riddle, 3 Binn. 139; Guthrie's Appeal, 1 Wright 9, and more recent decisions. Cases may be found, it is true, in which it has been held that merely directing a division among heirs of the body is not alone sufficient to con-

[Powell *v.* Board of Domestic Missions.]

vert those words into words of purchase. Blanford *v.* Dymock, 4 T. R. 82, relied upon by the defendant in error, is one of them; Jesson *v.* Wright, 2 Bligh 1, is another. In neither of them were words of limitation superadded to the devise of the remainder to "heirs of the body," or "issue." There was but a single indication of an intent to use those words in any other than their primitive sense. And in the former case, Buller, J., while assenting to the construction given to the will, remarked that he thought the court, in giving it, went further than ever had been done in former cases, since, in order thus to construe the will, the words " and amongst" must be rejected. Numerous cases may also be found in which it has been held that added words of limitation are not enough to rebut the presumption that a limitation was intended by the use of the words " heirs of the body," but I am not aware of any case of recognised authority that denies such an effect to such an added limitation and words of partitive distribution, when *both* are found in the same will. The learned counsel for the defendant in error has referred to none, though he has made no small examination. He finds himself constrained to admit that one of the clauses in this will must be struck out, in order to maintain the construction given to it in the court below, and his argument has been directed to show that we are warranted in striking it out, or giving no effect to it. His argument is built upon the words which follow the devise to the issue of the first taker, and the directions how they shall take. Were it not for the words "if he shall die without issue," introducing the direction to the executors to sell and distribute among others, he concedes that it would perhaps hardly be open to argument that the estate of the first taker was greater than an estate for life. But he insists that those words, by implication, enlarge that interest, which without them would be a life estate, into an estate tail.

That an estate tail in the devisee of a life interest is ordinarily implied from a gift over in default of his issue, or in the event of his leaving no issue, or dying without issue or for want of issue, must be admitted, if there be no express devise to the heirs of the body or issue. But where a gift over on such a contingency operates to enlarge an estate in the first taker, given expressly for life, into an estate tail, it is by presuming the gift of a remainder to his issue or the heirs of his body. The will of the testator being plain that the devisees over shall not take, while there are in being heirs of the body or issue of the first taker, it is inferred his intent was that the estate remaining after the determination of the particular estate should be enjoyed by such heir or issue. Otherwise it would be in abeyance until an indefinite failure of issue might occur. Hence, the will is construed to be an express devise for life, with remainder to the

issue of the first taker, indefinitely, which by the operation of the rule in Shelley's Case becomes an estate tail in him. The implication is not of an estate tail directly, but of a gift of a remainder to the issue from which, together with the life estate in the ancestor, results the estate tail. When, however, there is an express gift of the intermediate interest, between the determination of the ancestor's particular estate, and the vesting in the devisee over in default of issue, there is no room for an implication of a gift of that intermediate interest. The express devise of it repels any implication of a devise. Here lies the difficulty in the case of the defendants in error. The remainder after Alexander Carson's life estate was expressly devised to his issue, as purchasers in fee. There was nothing left, therefore, out of which an estate tail could be created. As we have seen, there was the same thing as a gift to his children or descendants living at his death, and to their heirs generally. The words in the gift over, " die without lawful issue," refer to the issue as defined by the testator, namely, children, and therefore the gift over is either an alternative limitation or an executory devise. It is well settled that where property is devised to a person for life, and after his death to his children equally and their heirs, with a limitation over in case he should die without issue, the words referring to a failure of issue mean a failure of children. And it is equally clear that where the limitation over is a failure of issue generally, if in the precedent devise the testator has used issue as a word of purchase, meaning children, it is the same as if the precedent devise of the remainder had been to children. In neither case will the devisee of the particular estate, which supports the remainder to issue or children, take more than an estate for life. See Smith's Executory Int., ch. 13, 17. It is not denied that such a limitation over may assist in a doubtful case, in determining in what sense the testator used the words heirs of the body, or issue, in the devise of the preceding remainder; but when he has clearly shown by a gift to them and their heirs distributively, that he meant them to take as purchasers, a gift over or failure of issue will not lift the words of purchase into words of limitation.

This subject is clearly presented in Hawkins on the Construction of Wills (an elementary treatise of great value, published in London in 1863, but not yet reprinted in this country). On page 192, he asserts the rule to be, that "When there is a devise to one for life with remainder to his issue as *tenants in common*, with a limitation to the *heirs general* of the issue, the issue take as purchasers in fee." In support of this he refers to Slater *v.* Dangerfield, 16 M. & W. 273, Greenwood *v.* Rothwell, 5 M. & G. 628, and 6 Beav. 492. He then adds: "The rule that words of limitation and distribution (together) convert issue into a word of purchase applies, although there be

a gift over in the event of the first taker dying without issue, or without leaving issue; and the gift over takes effect as an alternative contingent remainder, in the event of there being no issue to take the fee as purchasers: Golder *v.* Morland, Kay 16. In Golder *v.* Crop, 5 Jurist 252, Romilly, M. R., said: "I have always considered that where an estate is given to the ancestor, and there is a direction that it afterwards go to the issue of his body, and the mode in which the issues are to take is specified, with words added giving them the absolute interest, then the ancestor takes an estate for life, and not an estate tail, although there is a devise over in the event of the ancestor not leaving any issue." Hawkins says very much more to the same effect, and cites many more authorities to which we need not refer in detail.

These principles, based upon the rule that the whole intent of the testator is to be effectuated if possible, have been fully adopted in this state. They were asserted in Findlay *v.* Riddle, 3 Binn. 139, already referred to. That case is almost identical with the present, except that in the devise of the remainder, after the life estate, the testator employed the strictly technical word "heirs." The testator gave to his son J. Findlay a plantation, "during his natural life," and after his decease, if he should die leaving lawful issue, to his heirs as tenants in common, and their respective heirs and assigns for ever, but in case he should die without lawful issue, then over in fee. It was held, after a most elaborate argument, that John Findlay took only an estate for life. In that case, as in this, the intent of the testator to use a word of limitation, in an abnormal sense, as a word of purchase, was shown by words of distributive modification and by added words of limitation. There was nothing else, and there, as here, there was a devise over on failure of issue. There, as here, the argument was pressed that John Findlay, the first taker, had an estate tail by virtue of the ultimate devise over, if he died without leaving lawful issue; but the argument was repudiated, because the gift of the intermediate estate was to the heirs of John as tenants in common, and their respective heirs and assigns for ever. Upon this Judge Yeates remarked, "there is nothing incompatible or inconsistent with the general intent that John should hold this plantation during his life, and his children, if he had any, hold the same after his death in fee simple as tenants in common, but if he had none, that it should go over." He added, "this materially contradistinguishes the will under consideration from the cases cited by the defendant's counsel, in all of which, in order to give effect to the chief intention of the testator, it became indispensably necessary to hold that the first takers were vested with an estate in fee tail. It seems to me fully to answer them." Findlay *v.* Riddle rules the present case. If the cases are distinguishable at all, there was

more reason for holding that John Findlay took an estate tail, than we have for deciding that such an estate vested in Alexander Carson.

It was said on the argument that Findlay *v.* Riddle was overruled by Heilman *v.* Bouslaugh, 1 Harris 344, and by George *v.* Morgan, 4 Id. 95. But this is a mistake. Heilman *v.* Bouslaugh was the construction of a deed, not a will, and the conveyance was to a married woman " during her natural life, and after her decease to the heirs of her body, and to them and their heirs and assigns for ever." There were added words of limitation, but none of distributive enjoyment. Ch. J. Gibson admitted that in a will, words of limitation may be shown to have been used as words of purchase, though he denied that this can be shown by added words of inheritance alone (which is undoubtedly the law), and he denied that technical words of limitation in a deed can be controlled by anything whatever. His ruling was perfectly consistent in all respects with Findlay *v.* Riddle.

George *v.* Morgan was the construction of a will, in which all that was ruled was that a devise to A., to hold to him for and during his natural life, and after his decease to the heirs of his body lawfully begotten, and to their heirs for ever, and in default of such issue, then over, gave an estate tail to A. There was nothing to show that the words heirs of the body were used as words of purchase, except the added words of inheritance. There was no direction that they should take as tenants in common, or share and share alike. The case was rightly decided. It does not touch Findlay *v.* Riddle. A dictum of Judge Bell would seem to indicate that in his opinion the reasoning of Judge Gibson, in Heilman *v.* Bouslaugh, repudiated some of Judge Yeates's reasoning, but this is a clear mistake. There was no reference in his opinion to Findlay *v.* Riddle, and the case before Judge Gibson called for none. It is argued, moreover, that the devise was, on failure of John Findlay's issue, to another son of the testator in full life. No reliance was placed upon that circumstance in the opinion of the court. And besides, in that respect the case was like the present. Here, the gift over, if Alexander Carson die without lawful issue, is for distribution among persons in full life when the will was made, persons whom the testator named.

We cannot doubt, therefore, that upon authority as well as principle, Alexander Carson must be held to have taken only an estate for life, under the will of his testator. Consequently, his deed, though intended to bar an entail, passed only a life estate to his grantee. According to the terms of the case stated, then, the judgment should have in favour of the defendant in the court below.

The judgment is reversed, and judgment is given for the defendant below in the case stated.