## Jones, Appellant, *v.* Jones.

*Will—Construction—Heirs.*

When a testator annexes words of explanation to heirs, or heirs of the body, as heirs now living, etc., using the term as a mere descriptio personarum, or for the specific designation of individuals, a new inheritance is thereby grafted upon the heirs to whom the estate is given, and they will be assumed to take as purchasers.

As the word heirs is necessary to create a fee, so in further limitation of the strictness of the feudal donation, the word body, or some other words of procreation are necessary to make it a fee tail, and ascertain to what heirs in particular the fee is limited.

A devise of land to testator's four sons " during their natural lives, and at their death to their or each of their nearest male heirs, but if either of them should desire to sell out to the other, it is my will that they shall do so of their own individual interest, but in no way to destroy this grant or bequest," is a devise of a life estate only to the sons.

Argued Jan. 7, 1902. Appeal, No. 177, Jan. T., 1901, by plaintiff, from judgment of C. P. No. 2, Phila. Co., March T., 1901, No. 89, for defendant on case stated in suit of Jacob C. Jones v. John F. Jones. Before McCollum, C. J., Mitchell, Dean, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Case stated to determine the marketable title to real estate.

The material portions of the case stated are as follows:

1. That John Jones died July 8, 1889, seized as of fee of, to and in the premises described in the agreement of sale, and having first made and published his last will and testament which after his decease was duly probated by the register of wills of Chester county, Pennsylvania.

2. The material part of said will was as follows:

"Second. I give to my four sons Jacob, Scott, John and Evan, the farm on which I reside in London, Britain Township, during their natural lives, and at their death to their or each of their nearest male heirs, but if either of them should desire to sell out to the other it is my will that they shall do so of their own individual interest, but in no way to destroy this grant or bequest."

3. That plaintiff and defendant are brothers, are children of said testator, and are the sons of Jacob and John mentioned in the second paragraph of said will. The farm mentioned in said second paragraph is the farm accurately described in the agreement of sale hereinafter set forth.

4. That at the time of making said will and at the time of testator's death he had six children. At those times defendant had three female children and none other; testator's other three sons were unmarried; Mary E. Crossan, a daughter of testator, had two sons; and Sarah Young, another daughter of testator, was childless.

The court entered judgment for defendant on the case stated.

*Error assigned* was in entering judgment for defendant on the case stated.

*Ira J. Williams,* with him *Simpson & Brown,* for appellant.—A devise to A for life, and then to his male heirs, creates an estate tail male, the law supplies the words "of the body:" Tremewen v. Permewan, 3 Perry & Dav. 303; Fraser v. Chene, 2 Mich. 90; Trollope v. Trollope, 1 Amb. 453; Ossueston's Case, 3 Salk. 336; Albemarle v. Colyear, 11 East, 548; Carter v. McMichael, 10 S. & R. 429; Reinhart v. Lantz, 37 Pa. 489; Linn v. Alexander, 59 Pa. 48.

If the devise is to lineal descendants, an estate tail is created: McCann v. McCann, 197 Pa. 458; Price v. Taylor, 28 Pa. 103.

As none of the devisees had any sons at the time of the devise, it is immaterial whether nearest male heirs be construed as "male heirs of the body," "male issue" or "male children;" an estate tail follows in any event: Seibert v. Wise, 70 Pa. 147; Knoderer v. Merriman, 7 Atl. Rep. 152; Beilstein v. Beilstein, 194 Pa. 155; Allen v. Markle, 36 Pa. 117; McCann v. McCann, 197 Pa. 458; Boyd v. Wingate, 13 W. N. C. 56; Hileman v.

Bouslaugh, 13 Pa. 344; Yarnall's App., 70 Pa. 335; Elliott v. Pearsoll, 8 W. & S. 38; Curtis v. Longstreth, 44 Pa. 297; Seely v. Seely, 44 Pa. 434; Angle v. Brosius, 43 Pa. 187.

No argument made or paper-book filed, for appellee.

OPINION BY MR. JUSTICE BROWN, February 24, 1902:

The testator devised his farm to his four sons " during their natural lives." The words used are apt for the expression of an intention, that each should have simply a life estate, and the concluding words of the clause, " but if either of them should desire to sell out to the other it is my will that they shall do so of their own individual interest, but in no way to destroy this grant or bequest," are still further indicative of the intention that they were not to take estates of inheritance. If such had been the intention of the testator, he would not have used the words just quoted, authorizing each of the sons to sell his interest to one of the other three, " but in no way to destroy this grant or bequest," for the devise of an absolute estate would have carried with it an absolute power of disposal. This clearly expressed intention of the testator cannot be violated by invoking the rule in Shelley's Case for the construction of his will. That rule has no application to it. Upon the death of each son, his interest in the farm is to pass to his " nearest male heirs." His heirs generally are not to succeed to it, for females—his own daughters, if any be born to him,—are excluded. " But, to bring the devise within the rule in Shelley's Case, the limitation in remainder must be to the heirs in fee, or in tail, as a nomen collectivum for the whole line of inheritable blood. When the testator annexes words of explanation to heirs, or heirs of the body, as to heirs now living, etc., using the terms as mere descriptio personarum, or for the specific designation of individuals, a new inheritance is thereby grafted upon the heirs to whom the estate is given: 4 Kent, Com. 221; and they will be assumed to take as purchasers: " Kuntzleman's Estate, 136 Pa. 142.

Nor is the estate of the appellant an estate tail, which, under the act of 1855, becomes a fee. " As the word heirs is necessary to create a fee, so in further limitation of the strictness of the feodal donation, the word body or some words of procreation, are necessary to make it a fee tail, and ascertain to what

heirs in particular the fee is limited:" 2 Bl. Com. 115. " Words of procreation are as necessary to the creation of an estate tail as words of inheritance are to a fee simple : " McIntyre v. Ramsey, 23 Pa. 317. What was said in this last case of the will of William McIntyre can be repeated of the one now before us : " But we have no words of procreation here."

It was, perhaps, a sentiment that prompted the testator to direct that, after the life estate devised to each of his sons was spent, the fee should pass to the son's " nearest male heirs." His concern may have been, as it sometimes is, to preserve in his own family, as long as possible, an estate for which he may have toiled, by placing it in the hands of men, better able, in his judgment, to keep it than women ; but, whatever may have been in his mind when he made his will, he did not devise an interest in the farm to each son, for life, and, after his death, to his heirs male, or to the heirs male of his body, or make any disposition of it that limited the devise after the life estate, to the male issue of the sons. The estate is ultimately devised to the " nearest male heirs " of each son, after his death, without regard to the father who may beget them or to the mother who may bear them. The qualifying word " nearest " would be unmeaning, used in connection with " heirs,"—those to whom the inheritance passes, whether near or remote in blood—if the term was employed by the testator in its technical sense, and it is evident that he did not so use it. By " nearest male heirs" he meant the nearest male kindred of his sons at the death of each and there was reason for his so using the words, as appears from the fourth clause of the case stated : " At the time of making said will and at the time of testator's death he had six children. At those times defendant had three female children and none other ; testator's other three sons were unmarried, Mary E. Crossan, a daughter of testator, had two sons, and Sarah Young, another daughter of testator was childless." He may well have thought that sons might not be born to his sons, and, in his concern that his estate should ultimately go to males of the blood of his sons, the devise was made to their " nearest male heirs," whoever they may be ; and, if the sons themselves should not be fathers of sons, their nearest male heirs may be sons of their sisters. The will cannot be interpreted otherwise, and no estate tail male was created by it.

No opinion was filed in entering judgment for the defendant on the case stated. The statement appears in appellant's paper-book that the court below simply followed Jones v. Bower, 20 Pa. C. C. Rep. 95. If this be so, that case was very properly followed, for the same question raised here was passed upon there by the common pleas of Chester county, in an opinion by BUTLER, J., which is exhaustive and convincing that the appellant has but a life estate in his father's farm.

Judgment affirmed.