# Stout *v.* Good, Appellant.

*Wills—Construction — Life estate — Rule in Shelley's Case— "Children"—"Issue."*

1. The rule in Shelley's Case is not a rule of construction but of law and is never applied until the meaning of the testator is first ascertained. If the words of the will show that the testator intended the remainderman to take directly from him and not by inheritance from the devisee of the life estate, then the rule has no application. On the other hand if they show a contrary intention, the rule applies.

2. The rule in Shelley's Case ordains that when a life estate is devised to a person and in the same will an estate is limited mediately or immediately to his heirs in fee or in tail, the word heirs is a word of limitation not of purchase, and the devise to the first-taker is enlarged to a fee. When the technical words suggested in the rule, "heirs," for a fee simple, and "heirs of his body," for a fee-tail, appear without more, then no further inquiry is permitted, and the rule applies; but where other words are used, such as children, or the like, and the rule is sought to be applied by analogy, then the burden rests upon him who claims them to be the equivalent of "heirs" or "heirs of his body" to show they were so intended; and this must be demonstrated from their context or other relevant language in the will, judged according to proper and appropriate rules of construction.

3. The general rule is that neither superadded words of limitation nor of distributive modification, standing alone, will be accepted as enough to overcome precedent words sufficient to give a fee; but the combination of the two will usually be taken as sufficient proof of an intent to create a new line of descent in the daughter C my house and lot known as No. 860 North 19th Street, remainderman and to make them purchasers from the testator.

4. Testator provided: "I give, devise and bequeath to my

for and during the term of her natural life, and upon the death of my said daughter, then I give, devise and bequeath my said house to the children of my said daughter share and share alike and the issue of said children who may then be deceased, such issue to take the share only that their deceased parent would have taken if living at that time, provided, however, that in the event of my said daughter C, leaving no issue at the time of her death, she shall have the right to will said house to whomsoever and in what manner soever she pleases." Upon a case stated to determine the interest of the daughter under the devise, *held,* that the rule in Shelley's Case did not apply and that the daughter only took a life estate in the property.

Argued March 25, 1914. Appeal, No. 395, Jan. T., 1913, by defendant, from judgment of C. P. No. 5, Philadelphia Co., Sept. T., 1913, No. 4985, for plaintiffs on case stated in case of Joshua C. Stout and Clara Virginia Stout, his wife, v. Daniel Good. Before Brown, Mestrezat, Potter, Elkin and Moschzisker, JJ. Reversed.

Case stated to determine title to real property. Before Ralston, J.

In addition to the facts set forth in the opinion of the Supreme Court it appeared from the case stated that on October 13, 1913, Clara Virginia Stout and Joshua C. Stout, her husband, made an agreement in writing to sell the property in question to Daniel Good, the defendant and to convey a good and marketable title in fee simple. That upon the tender of a deed the defendant refused to accept same. Under the case stated, if the court was of the opinion that the plaintiffs could convey a good and marketable title, in fee simple, judgment was to be entered for the plaintiffs. Otherwise, judgment was to be entered for the defendant.

The court entered judgment for the plaintiffs upon the case stated and defendant appealed.

*Error assigned* was in entering judgment in favor of the plaintiffs.

*John V. McCann,* for appellant.

*Wm. B. S. Ferguson,* for appellees.

OPINION BY MR. JUSTICE MOSCHZISKER, May 18, 1914:

The question for determination in this case is: Did the plaintiff, Clara Virginia Stout, take an estate-tail, enlarged to a fee, or has she but a life estate?

The testator provided, "I give, devise and bequeath to my daughter Clara Virginia Stout,......my house and lot known as No. 860 North 19th street,......for and during the term of her natural life, and upon the death of my said daughter, then I give devise and bequeath my said house to the children of my said daughter share and share alike and the issue of said children who may then be deceased, such issue to take the share only that their deceased parent would have taken if living at that time, provided, however, that in the event of my said daughter, Clara Virginia Stout leaving no issue at the time of her death, she shall have the right to will said house to whomsoever and in what manner soever she pleases."

The issue arose in a case stated wherein it was agreed that if the court below decided the testator's daughter took a fee, judgment should go for the plaintiffs, otherwise for the defendant. It was determined that, under the rule in Shelley's Case, and the Act of April 27, 1855, P. L. 368, Mrs. Stout possessed a fee-simple estate; judgment was entered accordingly, and the defendant has appealed.

The rule in Shelley's Case ordains that when a life estate is devised to a person and in the same will an estate is limited "mediately or immediately to his heirs in fee or in tail......'the heirs' are words of limitation ......not of purchase," and the devise to the first taker is enlarged to a fee. When the technical words suggested in the rule, "heirs," for a fee-simple, and "heirs of his body," for a fee-tail, appear without more, then no further inquiry is permitted, and the rule applies; but

where other words are used, such as children, or the like, and the rule is sought to be applied by analogy, then the burden rests upon him who claims them to be the equivalent of "heirs" or "heirs of his body" to show they were so intended; and this must be demonstrated from their context or other relevant language in the will, judged according to proper and appropriate rules of construction (See, Guthrie's App., 37 Pa. 9, 14, 15; Criswell's App., 41 Pa. 288, 291). The rule governs whenever the will shows a clear intent to vest a fee-simple or a fee-tail in the heirs of the first-taker, qua such heirs; even though the interest of such first-taker is expressly stated to be but a life estate, and even though the technical word "heirs" or the phrase "heirs of his body" is not used (Lauer v. Hoffman, 241 Pa. 315). But when neither the word nor the phrase in question is present, then, before the life estate can be enlarged to a fee, it must clearly appear from the language employed that the remaindermen are to inherit from the original devisee, and not to take as devisees directly from the testator: particularly, when, as is so often the case, the application of the rule will have the effect of defeating the testator's express declaration that the first-taker shall have but a life estate (Kemp v. Reinhard, 228 Pa. 143). Therefore, in the absence of technical words of limitation, the rule should never be applied, unless a paramount intent to make the first devisee a source of inheritable succession plainly appears; but where the language used brings the case within the rule, the fact that the testator desired that it should not operate, is of no importance: Grimes v. Shirk, 169 Pa. 74, 76; Lauer v. Hoffman, supra; Shapley v. Diehl, 203 Pa. 566, 569.

In order to determine the testator's intent, we must apply the recognized canons of construction, and his words ought to be taken in their "proper technical sense," unless their context or other parts of the will plainly show that they were used in a different sense (Doebler's Est., 64 Pa. 9, 15). All authorities agree that

"children" is prima facie a word of purchase, and that it cannot be construed otherwise unless the context plainly shows that the testator did not employ the word in its ordinary sense (Affolter v. May, 115 Pa. 54; Guthrie's App., 37 Pa. 9, 14). While "issue" is most often used as a word of limitation, yet, it is not technically so to the same degree as "heirs" or "heirs of his body," and it yields readily to a context that indicates its use as a word of purchase (Taylor v. Taylor, 63 Pa. 481, 483; Beckley v. Reigert, 212 Pa. 91, 93; O'Rourke v. Sherwin, 156 Pa. 285, 291; Robins v. Quinlivin, 79 Pa. 333; Powell v. Board of Domestic Missions, 49 Pa. 46, 53). Where the devise is to one for life with remainder to his children, then a subsequent reference to the death of the life-tenant "without issue" or "leaving no issue," ordinarily will be construed to mean, such issue as those previously mentioned, and not an indefinite failure of issue (Curtis v. Longstreth, 44 Pa. 297, 302-3; Sheets's Estate, 52 Pa. 257, 268; Carlisle v. Carlisle, 243 Pa. 116). The rule in Shelley's Case is not a rule of construction, but of law, and it is never applied until the meaning of the testator is first ascertained (Yarnall's App., 70 Pa. 335, 340). If the words of the will show that the testator intended the remaindermen to take directly from him, and not by inheritance from the devisee of the life estate, then the rule has no application (Kemp v. Reinhard, 228 Pa. 143); on the other hand, if they show a contrary intention, the rule applies (Lauer v. Hoffman, 241 Pa. 315).

. When superadded words of limitation are combined. with words of distributive modification which, in a situation possible to arise, would vary the distribution ordained by the existing inheritance laws, that is proof that the testator did not intend those to whom the words of distributive modification apply to take by succession of law as the heirs of the devisee of the life estate, and indicates that he intended them to take directly from him; for had he wished them to inherit as heirs of the

life tenant, he would not have expressly directed a distribution that might vary that fixed by the inheritance laws (Walker v. Milligan, 45 Pa. 178; O'Rourke v. Sherwin, 156 Pa. 285, 292; Grimes v. Shirk, 169 Pa. 74, 77; Robins v. Quinlivin, 79 Pa. 333; Powell v. Board of D. M., 49 Pa. 46, 55; Hill v. Giles, 201 Pa. 215; Jones v. Jones, 201 Pa. 548, 550). The general rule is that neither superadded words of limitation nor of distributive modification, standing alone, will be accepted as enough to overcome precedent words sufficient to give a fee; but the combination of the two will usually be taken as sufficient proof of an intent to create a new line of descent in the remaindermen and to make them purchasers from the testator. This is not always so, however, for sometimes, even the combination of the two will not be given that effect, where the words used are general in form and do not show an intent to change the course of descent or the general scheme of distribution fixed by the inheritance laws (Grimes v. Shirk, 169 Pa. 74); but where the distributive modification is an express direction (as here) that those who get the remainder "shall only" take in certain proportions, which direction, when applied, might have the effect of changing the general scheme of distribution fixed by the inheritance laws, then, this is evidence of an intent that the remaindermen are to take as purchasers with the line of descent starting from them. Under the Act of April 27, 1855, P. L. 368, words that would have created an estate in fee-tail now make a fee-simple, and the statute expressly provides that estates thus created "shall be inheritable" as such, i. e., as fee-simple estates.

When the foregoing relevant rules are applied to the will before us, it is plain that the testator did not intend those to whom he devised the property upon the death of his daughter, to inherit it from her; on the contrary, it is manifest that he meant them to take directly from him. The testator leaves the remainder to the "children" of his daughter, and there is nothing in the context suf-

ficient to show that the term "children" was used in any other than its ordinary sense, as a word of purchase: True, the testator makes provision for the issue of these children, "such issue to take the share only that their deceased parent would have taken if living at that time." But this latter direction, instead of indicating that "issue" was intended to modify "children," so that the two words should be taken interchangeably, and both together understood as meaning "heirs of her body," thus creating an estate-tail in the first-taker with an inheritable line of succession to flow from her to her issue to the most remote degree, rather suggests the contrary,—i. e., that he intended to provide directly and only for the children of his daughter and such of their issue as might be alive at the time of her death. In other words, instead of simply pointing out a class of heirs to succeed by inheritance, the testator, in effect, specified persons to be ascertained at a given time from a general description stated by him.

Since there is nothing here approaching a limitation to "heirs" general, Mrs. Stout's only claim to a fee is through an estate tail; and to accomplish this, she must depend upon the fact that the word "issue" follows the word "children." But if, in order to work an entail, with the first-taker as the root of an inheritable succession, we accept "issue" as a superadded word of limitation, governing "children," then we come squarely against the rule that, when in a devise to issue superadded words of limitation and distributive modification are both present, it is sufficient to show an intent that such issue shall take as purchasers. On the other hand, if we do not accept "issue" as a word of limitation, then it must be taken as on a par with "children," and in that case, technically, the express terms of the devise would be inconsistent with an estate-tail; for in such an estate lineal heirs in two different generations cannot come into their inheritance at one and the same time, as directed by the present will (Nice's App., 50 Pa. 143, 148-9).

Then, again, there is nothing in the will to suggest that the testator had in mind that essential attribute of an estate-tail, an indefinite failure of issue. This is not the case of a simple devise to one and his issue; nor is it an instance where an estate-tail can be implied from a devise over in default of issue, for the provision that, "in the event of my said daughter......leaving no issue at the time of her death, she shall have the right to will," etc., indicates that the testator contemplated a definite failure of issue, —the words, "leaving no issue," simply meaning, no such issue as above named, i. e., the children of the devisee for life living at the time of her decease and the living issue of those who might then be dead. Finally, the provision that the issue living at the death of the first-taker shall "only" take the share which their deceased parent would have taken if living "at that time," is a distributive modification which may lead to this result; should all the children of the first-taker be deceased at the time of her demise, leaving descendants standing in the same degree of consanguinity to her, they would not take per capita, as directed by the inheritance laws (Sec. 14, Act of April 6, 1833, P. L. 207; section 1, Act of June 30, 1885, P. L. 251), but would have to take per stirpes, as directed by the will; for example, should the daughter leave no children, but issue consisting of five grandchildren, two born of one deceased child and three of another, under the law the first set of grandchildren would inherit between them a two-fifths interest in the property, whereas under the scheme of distribution expressly ordered by the testator they would take a one-half interest. All of these incongruities taken together tend to prove that the testator never designed an estate of inheritance for his daughter, but intended the remaindermen to take by purchase directly from him; and this being so, the rule in Shelley's Case can have no application.

Of course, strictly speaking, when inquiring as to an estate-tail, any limitation or direction for distribution

which tends to interfere with the succession of one heir after another in accordance with the scheme of an entail, in theory, would show an intent not to create such an estate; but in some of the cases cited by us, general words that might have been given that effect, such as, "share and share alike," or "tenants in common," were held insufficient for the purpose, as showing no paramount intent to vary the entail. These decisions were prior to the year 1855, and, no doubt, in many instances, they may be attributed to a then prevalent judicial desire to get away from the technical rules relating to estates-tail; but they are somewhat confusing at the present time, unless it is constantly kept in mind that prior to the Act of 1855, supra, such estates were subject to their own peculiar common law rules of inheritance (Guthrie's App., 37 Pa. 9; Findlay v. Riddle, 3 Binney 139, 164), whereas, all entails created since the Act of 1855, after they are ascertained to be such, come under the general laws of inheritance, as though fee-simple estates (See the words of the act and Simpson v. Reed, 205 Pa. 53, 55; Pifer v. Locke, 205 Pa. 616). While it is still the rule that a distributive direction not at variance with the law of inheritance, when standing alone, is of no importance (Lea v. Sanson, 245 Pa. 392), yet, we have found no case where an actual modification of the scheme of inheritance appropriate to a fee-simple estate, as in the present will, has not been treated as significant.

In the multitude of authorities upon the rule in Shelley's Case, it is hard, and often impossible, to find any one which precisely fits the particular case under review, and the citation of long lists of decisions upon the general subject only leads to confusion. Therefore, in this opinion, we have simply cited authorities in support of the general principles or canons of construction which seem helpful to a proper determination of the actual questions involved. We conclude that Mrs. Stout took but a life estate, that the rule in question does not apply,

and that the learned court below erred in entering judg-
ment in favor of the plaintiffs.

The assignments of error are sustained; the judgment
is reversed and is here entered for the defendant.