# Lee v. Sanson, Appellant.

*Wills—Construction—Fee tail—Rule in Shelley's Case—"Descendants."*

1. "Descendants" is not a technical word of limitation; and whenever in a devise a word appears which is not strictly one of limitation, if the rule in Shelley's Case is sought to be applied by analogy, the burden rests upon him who claims such word to be the equivalent of "heirs" or "heirs of his body" to demonstrate from the language of the will that it was so intended.

2. The rule in Shelley's Case applies whenever technical words of limitation, like "heirs" or "heirs of the body," appear without more; and. this is so even when superadded words of limitation are present, if they do not actually demonstrate that the technical words which precede them are intended merely to designate specific individuals, and, generally speaking, a phrase, such as "may be then living," is not sufficient in itself to reduce such technical terms to words of purchase. This last principle, however, has no application where the word "heirs" is not used and the word "descendants" is employed, for this latter word is not of like force with the word "heirs," being at most only the equivalent of "issue."

3. If it appear, either by expression or clear implication, that by the word "issue" testator meant issue living at a particular period, as at the death of the first taker, and not the whole line of suc-cession, which would be included under "heirs of the body," it must necessarily be construed to be a word of purchase, and the rule in Shelley's Case can have no application.

4. Testator gave the residue of his estate to his wife for life, and directed that at her death the property should be divided into shares. He then devised as follows: "To my son C I devise a life estate in his share, if he shall then be living. Upon his decease his share of said realty shall pass to his descendants who shall then be living, who shall take the same in remainder, in such propor-tions, with like force and effect as they would have taken said real estate had he then died actually seized and possessed thereof." Upon a case to determine the interest taken by the son, *held,* that

the rule in Shelley's Case did not apply and that the estate given
to him, was only a life estate.

Argued March 26, 1914. Appeal, No. 16, Jan. T., 1914,
by defendant, from judgment of C. P. No. 3, Philadel-
phia Co., Sept. T., 1913, No. 399, for plaintiff on case
stated in case of Charles M. Lea v. Morris Sanson. Be-
fore FELL, C. J., MESTREZAT, POTTER, ELKIN and MOSCH-
ZISKER, JJ. Reversed.

Case stated to determine title to property.    Before
DAVIS, J.

In addition to the facts set forth in the opinion of the
Supreme Court, it appeared from the case stated that
Charles M. Lea and Charlotte Augusta, his wife, agreed
to sell to Morris Sanson, the defendant, the property in
dispute; that when plaintiff tendered a deed, defendant
refused to accept the same, alleging that the grantors
had not a title in fee to the property.

It was stipulated in the case stated that if the court
was of the opinion that the plaintiffs could convey a
good and marketable title in fee simple, judgment should
be entered for the plaintiff; otherwise to be entered for
the defendant. The court entered judgment on the case
stated for the plaintiff. Defendant appealed.

*Error assigned* was in entering judgment on the case
stated in favor of the plaintiff.

*Horace Stern,* with him *Morris Wolf,* for appellant.

*Abraham M. Beitler,* for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, May 18, 1914:
The question for determination in this case is: Did
the plaintiff, Charles M. Lea, take an estate tail enlarged
to a fee, or but a life estate?
The testator gave the residue of his estate to his wife

for life, and directed that at her death the property should be divided into shares. The devise to the plaintiff was as follows: "To my son Charles I devise a life estate in his share, if he shall then be living. Upon his decease his share of said realty shall pass to his descendants who shall then be living, who shall take the same in remainder, in such proportions, with like force and effect as they would have taken said real estate had he then died actually seized and possessed thereof."

The issue arose in a case stated wherein it was agreed that if it should be decided that Charles M. Lea took a fee, judgment should be entered for him, otherwise for the defendant. The plaintiff secured the judgment and the defendant has appealed.

The court below sustained the plaintiff's contention that the terms of the devise gave him an estate tail which, under the rule in Shelley's Case, and the Act of April 27, 1855, P. L. 368, was enlarged to a fee. We cannot agree in this conclusion; for it is apparent that the testator did not intend to use the word "descendants" in the sense of "heirs of the body" of the first taker, but simply to designate a certain set of persons to take directly from him, the testator, at a given time.

The words of the will are not sufficient in themselves to create an estate in fee-simple, for "descendants" does not comprehend "heirs" at law generally (Bates v. Gillette, 132 Ill. 287, 298) ; and the phrase "who shall be then living" restricts the word "descendants" to those alive at the time of the death of the first-taker, thereby negativing the idea of a devise to "heirs of the body," or descendants to the remotest degree, which is the essential attribute of an estate tail. It is quite true that the phrase "shall pass to his descendants" strongly suggests an intent to make the first-taker the source of inheritable succession, and had the devise ended at that point, it could well be held to create an estate tail; but it did not, and this is the pinch of the case.

A clear statement of the principle which controls

under circumstances such as presented here, is to be found in the opinion of Mr. Justice SHARSWOOD, in Taylor v. Taylor, 63 Pa. 481, 484, where he said : "It is a position not open to dispute that if it appear, either by expression or clear implication, that by the word 'issue' (in this case, "descendants") the testator meant......issue living at a particular period, as at the death of the first taker, and not the whole line of succession, which would be included under 'heirs of the body,' it must necessarily be construed to be a word of purchase, and the rule in Shelley's Case can have no application"; and again, in Robins v. Quinlivin, 79 Pa. 333, 335, where it is stated, "If there be on the face of the will sufficient to show that the word was intended......to be applied only to...... descendants of a particular class at a particular time, it is to be construed as a word of purchase, and not of limitation"; and in Jones v. Jones, 201 Pa. 548, 550, where Mr. Justice BROWN said, "When a testator annexes words of explanation to heirs or heirs of the body, as to heirs now living, etc., using the term as a mere descriptio personarum, or for the specific description of individuals, a new inheritance is thereby engrafted upon the heirs to whom the estate is given (4 Kent Com. 221), and they will be assumed to take as purchasers: Kuntzleman's Est., 136 Pa. 142." Also see, McCann v. McCann, 197 Pa. 452, 459; Hill v. Giles, 201 Pa. 215, 217; Findlay v. Riddle, 3 Binney 139, 166. The principle is different, however, and the rule in Shelley's Case applies whenever technical words of limitation, like "heirs" or "heirs of the body," appear without more; and this is so even when superadded words of limitation are present, if they do not actually demonstrate that the technical words which precede them are intended merely to designate specific individuals, and, generally speaking, a phrase, such as "may be then living," is not sufficient in itself to reduce these technical terms to words of purchase (Harrison v. Harris, 245 Pa. 397; Crisswell's App., 41 Pa. 288; Cockins' App., 111 Pa. 26, and Heister v. Yer-

ger, 166 Pa. 445). But this last principle has no application in the present case; for here "heirs" is not used, and the word which is employed, "descendants," is not of like force, "at most, it is only the equivalent of issue" (Walns' Est., 189 Pa. 631, 632-3), which is a word that "yields readily to a context indicating its use as a word of purchase" (Stout v. Good, 245 Pa. 383) and which, prima facie, "has not the same significance as 'heirs of the body'......" (Anderson Law Dictionary). "Descendants" is not a technical word of limitation; and whenever in a devise a word appears which is not strictly one of limitation, if the rule in Shelley's Case is sought to be applied by analogy, the burden rests upon him who claims such word to be the equivalent of "heirs" or "heirs of his body" to demonstrate from the language of the will that it was so intended (Stout v. Good, supra).

The testator uses the word "descendants" several times; he first provides that, at the death of his widow, his property shall be divided "into as many parts and shares as at that time there shall be children of mine then living and children of mine then dead represented by 'descendants' then living," next, he states, "to each of my children, Arthur and Nina, who shall then be living, and to the 'descendants' who shall then be entitled of any of my children then deceased, I devise its share, in fee-simple," then follows the particular provision with which we are dealing. It seems clear that the testator first employed "descendants" as a mere descriptio personarum, hence, it is but reasonable to assume that he meant the word in that sense in the devise in question; and there is nothing called to our attention from the other parts of the will sufficient to overcome this assumption, or to show that he intended it as a synonym for the technical phrase, "heirs of the body." The last words of the devise, which states that the descendants of Charles, living at the time of his death, shall take "in remainder in such proportions, with like force and effect as they would have taken said real estate had he

then died actually seized and possessed thereof," as a distributive direction, accord with the inheritance laws, and, since estates tail, after they have been determined to be such, now descend as fee-simple estates (Stout v. Good, supra), if it were not for the presence of the superadded words of limitation which this direction con tains within itself, and those that follow the word "descendants," i. e., "then living," these words of distribution would not, in themselves, be sufficient to overcome what might appear to be an intent to create an estate-tail. As it is, however, we have an instance of superadded words of limitation joined with a special direction for distribution; which combination, in a case like this, is usually held to be conclusive evidence of an intent that the remaindermen shall take as purchasers (Grimes v. Shirk, 169 Pa. 74, 77; Stout v. Good, supra).

After considering all the relevant parts of the will (Kemp v. Reinhard, 228 Pa. 143), we are convinced that the learned court below erred in entering judgment for the plaintiff. The assignments of error are sustained; the judgment is reversed and is here entered for the defendant.