## Mayhew's Estate.

*Wills—Rule in Shelley's Case—Issue—Definite failure when testator died before July 9, 1897.*

Testatrix died Feb. 13, 1885, leaving a will in which she said she did not desire her real estate to be sold during her daughter G.'s lifetime, and devised said real estate to G. for life, with remainder to her issue, with gift over if she died without issue. By a subsequent clause, she appointed trustees: *Held*, that "issue" was used in the sense of "descendants" as distinguished from "heirs of the body," and that the remaindermen were to be ascertained at G.'s death; hence, the failure of issue was definite and G. took only a life estate.

Exceptions to adjudication. O. C. Phila. Co., July T., 1887, No. 137.

*Paul M. Rosenwey*, for exceptions; *John Booth Miller*, contra.

GUMMEY, J., March 3, 1922.—The rule in Shelley's Case is not a rule of construction, but of law, and it is never applied until the meaning of the testator is first ascertained. If the words of the will show that the testator intended the remaindermen to take directly from him, and not by inheritance from the devisee of the life estate, then the rule has no application; on the other hand, if they show a contrary intention, the rule applies: Stout *v*. Good, 245 Pa. 383, 387, and cases cited.

The testatrix died Feb. 13, 1885; her daughter, Gertrude Estelle Mayhew (now Pike), survived her and has issue, six children, all of whom are living; and the material parts of the will which we are required to consider are as follows:

### Mayhew's Estate.

"I wish my real estate kept in good repair, and I do not desire it to be sold during the life time of my daughter Gertrude Estelle Mayhew.

"I give and bequeath to my said daughter Gertrude Estelle Mayhew all my personal property and the interest of all real estate belonging to me, as long as she lives, but if my said daughter Gertrude Estelle Mayhew should marry, then at her death the interest of my real estate goes to her issue.

"But in the event of my daughter's death without issue, all my property shall go to the Home for Destitute Colored Children, located at Marylandville, on the Darby Road.

"I appoint Messrs. William Burton Sloan, William Penn Johnson, Patrick Smith to be the executors and trustees of my will and guardians of my daughter during her minority.

"Philadelphia, January 6th, 1872."

Whether the personal property and the real estate follow the same course it is not necessary to decide, as it appears from a prior account that all of the personalty was consumed in the payment of the decedent's debts and the costs of administration, so that in construing the will we are considering its effect upon the real estate only; the fund before the court representing the proceeds from real estate, to wit, the principal of a ground rent.

We believe that this will shows clearly an intention on the part of the testatrix to give her daughter a life estate only, and that the remaindermen take, not by inheritance from the life-tenant, but directly from the testatrix.

The direction in the will that the real estate should not be sold during the life of testatrix's daughter, coupled with the gift of "the interest of all real estate" as long as the daughter lives, is significant as showing the testatrix's intention that her daughter should take a life estate only; that is, the real estate was to be kept intact for the benefit of her daughter as long as she lived, and at her death it was to go to her issue, if any; if none, then to the charity. This thought is further evidenced by the subsequent clause of the will in which trustees are appointed, thus indicating an intention that the real estate should be held in trust for the benefit of the life-tenant designated in the will, and that upon the termination of the life estate the *corpus* should pass to the remaindermen.

There are no technical words of limitation in the will, such as "heirs" or "heirs of the body," which, without more, would make the rule in Shelley's Case applicable (See Stout *v.* Good, 245 Pa. 383, 387), but the estate is limited to the "issue" of the testatrix's daughter. While the word "issue" in a will means *prima facie* the same as "heirs of the body," and is frequently used as a word of limitation, yet it is not technically so, and readily yields to a context showing that it was intended as a word of purchase (Taylor *v.* Taylor, 63 Pa. 481) ; or as the thought is expressed by Mr. Chief Justice Moschzisker in English's Estate, 270 Pa. 1, 4: "While 'issue,' when used in a devise, has been held time and again to mean the same as 'heirs of the body,' yet such construction was adopted only on the theory that the word was probably so intended by the testator, and not with the idea that the term 'issue,' of and in itself, is the equivalent of the technical phrase 'heirs of the body.' "

We do not believe that this testatrix used the word "issue" as the equivalent of the technical phrase "heirs of the body;" but in the sense of "descendants." See Lee *v.* Sanson, 245 Pa. 392. When the will was made testatrix's daughter Gertrude was unmarried; she subsequently married, thus making effective the provisions in the will to take effect upon her marriage, and the word "then," in the expression "then at her death," shows conclusively that the death of the daughter was the time fixed by the testatrix when the

1 D. & C.

daughter's descendants, if any, should come into the enjoyment of the estate; and if she left no descendants capable of taking at that time, then the alternate gift to the charity would immediately take effect.

As the testatrix died prior to the passage of the Act of July 9, 1897, P. L. 213 (re-enacted in the Wills Act of 1917, see section 14, P. L. 408), we have, of course, construed the will with reference to the Act of 1855 and cases decided under it.

The exceptions are dismissed.